Calvin R. **ARNOLD**, Plaintiff–Appellant,

v.

**ARROW TRANSPORTATION CO. OF DELAWARE; Arrow Transportation Co. Employees Retirement Plan, Defendants–Appellees.**

No. 89–35280.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 8, 1990.

Memorandum Oct. 3, 1990.

Order and Opinion Feb. 19, 1991.

Leigh D. Stephenson, Spears, Lubersky, Bledsoe, Anderson, Young & Hilliard, Portland, Or., for plaintiff-appellant.

Ronald H. Hoevet, Hoevet, Snyder & Miller, P.C., and Leslie L. Wellman, Portland, Or., for defendants-appellees.

Before WALLACE, Chief Judge, FERGUSON and BRUNETTI, Circuit Judges.

## ORDER

The memorandum disposition filed October 3, 1990, is redesignated as an authored opinion by Judge Brunetti.

## OPINION

BRUNETTI, Circuit Judge:

Plaintiff-appellant Calvin Arnold ("Arnold") sued his employer, defendant-appellee Arrow Transportation Co. ("Arrow"), and its retirement plan, defendant-appellee Retirement Plan for Employees of Arrow Transportation Co. (the "Retirement Plan"), alleging the improper denial of his pension benefits due under the Retirement Plan in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). After a bench trial the district court ruled that appellees did not violate ERISA in reducing Arnold's retirement benefits. We affirm.

### A. *Facts and Procedural Background*

The facts of this case are undisputed. Arnold was an employee of Arrow, whose principal place of business is in Portland, for thirty-seven years. Arnold was elected to Arrow's executive committee in 1970, made Vice President in 1976, and was covered under the Retirement Plan from 1963 until his voluntary retirement on March 1, 1985, one month short of his sixtieth birthday. The Retirement Plan was a qualified defined benefit plan, as defined by ERISA, 29 U.S.C. §§ 1001 et seq., that provided benefits based on a formula using the employee's years of service and final average salary.

At the end of 1983 Arrow amended the Retirement Plan, ceasing all benefit accruals and freezing already accrued benefits of all participants. On March 29, 1984 Arrow filed a Notice of Intent to Terminate

the Retirement Plan with the Pension Benefit Guaranty Corp. ("PBGC").[1] Arrow terminated the Retirement Plan on April 9, 1984. At that time, as in prior years, the actuarial present value of benefits exceeded the amount of assets in the fund. In other words, the Retirement Plan had unfunded liabilities and did not have enough assets to pay full accrued benefits as determined under its benefit formula. However, the Retirement Plan did satisfy minimum funding standards for each Retirement Plan year, and there was no accumulated funding deficiency with respect to any year.

In April 1984 Arnold requested a statement of what his benefits would be at age 60. On March 4, 1985 and again on March 11, he received letters from the Retirement Plan actuaries stating that "benefits may be adjusted or recaptured *if plan assets are insufficient to satisfy guaranteed benefits*, after assets are allocated according to ERISA." (emphasis added). On March 14, 1985, two weeks after his retirement, he received a corrected estimate of a monthly benefit of $1,443.12 with an initial death benefit of $177,676.87.

On June 23, 1985 he was first notified that he would receive monthly benefits of only $996.74, with an initial death benefit of $99,160, and not the previous estimate. On October 30, 1987 he was notified that he would receive monthly the PBGC-guaranteed single life annuity of $1,041.48. Arnold currently receives a full cash refund annuity of $975.15; the $1,041.48 amount is the actuarial equivalent to this full cash refund annuity.[2] While other employees have also received less than their full accrued benefits, it is undisputed that the funds in the Retirement Plan, to the extent they were distributed to participants, were correctly allocated as required by the Retirement Plan and ERISA.

On July 23, 1987 Arnold filed suit, alleging four claims. The district court dismissed on summary judgment three of his claims; this dismissal is not challenged on appeal. The final claim, tried to the court, alleged the improper denial of benefits because any Retirement Plan language purporting to limit Arnold's right to payment of full accrued benefits or permit termination of the Retirement Plan at Arrow's will, without consideration of Arrow's ability to continue funding the Retirement Plan, was included by mistake and contrary to the intent and subsequent interpretation of Arrow's management. Moreover, Arnold alleged that the inclusion of any such language was not made known to him or other participants. Arnold sought the payment or issuance of an annuity from Arrow covering the difference between his entitled benefits under the Retirement Plan and his actual received benefits.

The district court found that Arnold "received notice of Arrow's right to terminate the plan and the possibility of loss of benefits which could result from a termination of the plan." The court held that Arrow's termination of the Retirement Plan and its monthly payments of $975.15 to Arnold did not violate the provisions of the Retirement Plan or ERISA, 29 U.S.C. § 1132(a)(1)(B).

Arnold appeals this ruling, contending that Arrow did not adequately disclose its limited liability, as the limited liability provisions of the Retirement Plan's Summary Plan Description did not satisfy the legal requirements of ERISA, 29 U.S.C. § 1022, and that because Arrow allegedly promised full payment of accrued benefits, it is directly liable for the difference between his entitled benefits under the Retirement Plan and his actual received benefits.[3]

1. The PBGC subsequently issued Arrow a Notice of Sufficiency on March 20, 1987 approving the allocation of the assets under the Retirement Plan and determining that the Retirement Plan assets were sufficient to discharge all obligations of the Retirement Plan to the extent guaranteed by the PBGC.

2. Arnold was informed that the $996.74 estimate was based on a retirement age of sixty-one, not

sixty, and as a normal annuity, rather than a full cash refund.

3. Arrow argues at the outset that (1) Arnold alleged the inadequacy of the Summary Plan Description in one of the claims dismissed on summary judgment, which is not on appeal, and therefore this subject should not be addressed and (2) Arnold seeks benefits directly from Arrow under a separate agreement or promise, as

## B. Standard of Review

Arnold contends that whether the limited liability provisions of the Retirement Plan's Summary Plan Description satisfy the legal requirements of ERISA is a legal question reviewed *de novo*. Arrow maintains that the district court's determinations as to the findings of fact are to be upheld unless clearly erroneous, and that its own interpretation and construction of the Retirement Plan's provisions should be reviewed under an arbitrary and capricious standard of review.

We review the district court's findings of fact under the clearly erroneous standard. Fed.R.Civ.P. 52(a); *Rozay's Transfer v. Local Freight Drivers*, 850 F.2d 1321, 1326 (9th Cir.1988), *cert. denied*, 490 U.S. 1030, 109 S.Ct. 1768, 104 L.Ed.2d 203 (1989). We review its findings of law *de novo*. *Id.* The interpretation of a federal statute, such as ERISA, is a question of law, and we review it *de novo*. *Saratoga Sav. & Loan Ass'n v. Federal Home Loan Bank Bd.*, 879 F.2d 689, 691 (9th Cir.1989).

## C. Limited Liability Provisions

Arnold first contends that Arrow did not adequately disclose its limited liability, as the limited liability provisions of the Retirement Plan's Summary Plan Description did not satisfy the legal requirements of ERISA, 29 U.S.C. § 1022. Whether these provisions satisfy ERISA is a legal question, which we review *de novo*. *See Rozay's Transfer*, 850 F.2d at 1326.

Under ERISA an employer must provide a summary plan description to participants which must describe "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits" and shall "be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022.[4] *See Stahl v. Tony's Bldg. Materials, Inc.*, 875 F.2d 1404, 1406–09 (9th Cir.1989).

In *Stahl* we evaluated a "Service Credits" limiting provision, described and referenced in two "Service Credits" sections, one of which was highlighted "IMPORTANT," of a multi-employer summary plan description that exceeded fifty pages. *Id.* at 1406–07. We held that the provisions met the legal requirements of ERISA, 29 U.S.C. § 1022, and ruled:

A plan summary description, therefore, cannot violate ERISA merely because it could have included language more specifically discussing the precise situation of a particular beneficiary. The description, instead, should provide information about the general circumstances in which benefits could be lost. The plan's rules should be explained to permit the ordinary employee to recognize that certain events or actions could trigger a loss of benefits. It need not discuss every imaginable situation in which such events or actions might occur, but it must be specific enough to enable the ordinary em-

---

he agrees that Arrow properly distributed the benefits under the Retirement Plan and ERISA, and therefore fails to state a claim for loss of benefits under the Retirement Plan or ERISA.

We disagree. Both the litigated claim and the district court's opinion address the issue of the adequacy of notice of the possibility of loss of benefits. Therefore, the legal adequacy of such notice falls within the scope of this appeal. Furthermore, Arrow's alleged promises to provide benefits beyond the Retirement Plan are contained within the Summary Plan Description, Arnold has stated a claim for benefits under the Retirement Plan and ERISA. *Cf. Edwards v. State Farm Mut. Auto. Ins. Co.*, 851 F.2d 134, 136 (6th Cir.1988) (summary plan statements are binding); *Kochendorfer v. Rockdale Sash & Trim Co. Profit Sharing Plan*, 653

F.Supp. 612, 614 (N.D.Ill.1987) and *Gors v. Venoy Palmer Market, Inc.*, 578 F.Supp. 365, 368 (E.D.Mich.1984) (challenges to a plan can be based on summary plan description and such a summary may modify the terms of the plan).

4. The Code of Federal Regulations specifically provides that a summary plan description:

1. Must not minimize limitations;
2. Must describe limitations as prominently as benefits;
3. Must not be misleading; and
4. Must either disclose limitations in close conjunction to benefit provisions or provide page numbers on which restrictions are described adjacent to a description or summary of benefits.

29 C.F.R. § 2520.102–2(a) and (b).

ployee to sense when there is a danger that benefits could be lost or diminished. *Stahl,* 875 F.2d at 1408.

In 1979 Arrow distributed a Summary Plan Description of the Retirement Plan's 1976 Restatement[5] to Arnold. The Summary Plan Description, entitled "Your Retirement Program," provided in part:

### LOSS OF BENEFITS

*Conditions which could disqualify you or your beneficiary from receiving anticipated benefits* under the plan are as follows:

... *If the plan terminates and there is not enough money in the fund to provide full benefits* (benefits may be provided by the Pension Benefit Guaranty Corporation, subject to its limitations on maximum benefits).

. . . . .

### TERMINATION OF THE PLAN

In the event the plan is terminated, any benefits you may have accumulated up to that time will become nonforfeitable, and plan funds accumulated up to the date of termination will be used to provide you with benefits *to the extent permitted by the amount then available in the pension fund.*

At plan termination, benefits under this plan are insured by the Pension Benefit Guaranty Corporation (PBGC). Generally, the PBGC guarantees most vested normal, early and late retirement benefits (and certain disability and spouse's benefits). However, *the PBGC does not guarantee all types of benefits under*

*covered plans, and the amount of benefit protection is subject to certain limitations.*

(emphasis added).

■ We believe that these provisions are not misleading and are sufficiently clear to apprise Plan participants as to the possibility that benefits could be lost or reduced, subject, however, to a minimum floor benefit guaranteed under the PBGC.[6] Moreover, these provisions are prominent, appearing on pages eleven and twelve of the twelve-page Summary Plan Description in the same typeface as the preceding ten pages of various benefit provisions. We find that because of the prominence and clarity of these provisions and their close conjunction to the summary of benefits, within a few pages in a short document, the limited liability provisions of the Retirement Plan's Summary Plan Description satisfied the legal requirements of ERISA, 29 U.S.C. § 1022, as they "provide[d] information about the general circumstances in which benefits could be lost [and] permit[ted] the ordinary employee to recognize that certain events or actions could trigger a loss of benefits [and were] specific enough to enable the ordinary employee to sense when there [was] a danger that benefits could be lost or diminished." *See Stahl,* 875 F.2d at 1408. Therefore, we hold that Arrow adequately disclosed its limited liability.[7]

### Attorney's Fees

■ Both parties have requested attorney's fees on the appeal pursuant to ERISA, which provides that "the court in

---

**5.** This Restatement, a complete revision of the Retirement Plan to conform to the then recently-passed ERISA legislation, specifically provided, *"If the fund is insufficient to provide any benefits, neither the employer nor the insurance company shall be liable to provide such benefits."* (emphasis added). However, Arnold testified that he never saw this document, nor its 1971 predecessor.

**6.** Arnold himself admits that while he reviewed the Summary Plan Description, he did not read the "LOSS OF BENEFITS" provisions, considering them "insurance company language" and believing that "it was something that was required in every plan, and it really wasn't too

much of a concern to me." Had he read these sections, he would have realized the possibility that his future benefits might be reduced.

**7.** Because we hold that Arrow adequately disclosed its limited liability in circumstances where the Plan could not provide full benefits, we need not address Arnold's claims as to Arrow's alleged promises of full payment of accrued benefits. *See generally, Murphy v. Heppenstall Co.,* 635 F.2d 233, 239 (3d Cir.1980) (employer obligated to provide full accrued benefits itself where no limitation of its liability), *cert. denied,* 454 U.S. 1142, 102 S.Ct. 999, 71 L.Ed.2d 293 (1982).

its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). Because we find in favor of Arrow on the merits, we deny Arnold's request for attorney's fees. Furthermore, because we find that (1) Arnold did not act in bad faith; (2) his ability to pay an attorney's fees award is questionable, as he is a retired truck driver; (3) any such award would not have a deterrent effect against others bringing such suits; (4) the suit did not raise a significant ERISA question; and (5) although ruling in Arrow's favor, Arnold's position was not without some merit, we deny Arrow's request for attorney's fees as well. *See Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir.1980) (setting forth guidelines for ERISA attorney's fees awards); *Paddack v. Morris*, 783 F.2d 844, 846 (9th Cir.1986) (recent application of *Hummell* guidelines).

AFFIRMED.

FERGUSON, Circuit Judge, dissenting:

An ERISA plan participant may sue an employer to recover the difference between minimum insured pension benefits paid by the Pension Benefit Guaranty Corporation (PBGC) and full vested benefits promised under a pension plan. *Murphy v. Heppenstall Co.*, 635 F.2d 233, 236–38 (3rd Cir. 1980), *cert. denied*, 454 U.S. 1142, 102 S.Ct. 999, 71 L.Ed.2d 293 (1982); *Plucinski v. I.A.M. Nat. Pension Fund*, 875 F.2d 1052, 1056 (3d Cir.1989). The PBGC formula for paying minimum benefits does not absolve the employer from civil liability for full payment unless the employer has expressly and intelligibly stated a limitation on liability in controlling pension plan documents. *Hurd v. Hutnik*, 419 F.Supp. 630, 655 (D. N.J.1976); *Murphy*, 635 F.2d at 239; *see also Nachman v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980). Based on this liability, appellant Arnold has sued his employer "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B).

Because statements in a summary plan description are controlling, *Edwards v. State Farm Mut. Auto. Ins. Co.*, 851 F.2d 134, 136 (6th Cir.1988); *McKnight v. Southern Life and Health Ins. Co.*, 758 F.2d 1566, 1570 (11th Cir.1985), we look to the terms of the Arrow Transportation Co.'s 1979 Summary Plan Description, "Your Retirement Program", to determine the employer's liability.

In this SPD, there is no express limitation of the employer's liability to pay *vested* benefits. Under the section "Loss of Benefits" appearing at page 11, the SPD states:

Conditions which could disqualify you or your beneficiary from receiving *anticipated* benefits under the plan are as follows:

. . . . .

If you have a break in service before becoming eligible for a vested benefit.

. . . . .

If the plan terminates and there is not enough money in the fund to provide full benefits.

(Emphasis added).

On its face, this section provides no limitation on employer liability for *vested* benefits, because it refers only to potential loss of *anticipated* benefits. The difference in these terms of art goes to a central purpose of ERISA, viz., to rectify the problem that "despite the enormous growth in . . . [pension] plans many employees with long years of employment are losing anticipated retirement benefits owing to the lack of vesting provisions in such plans. . . ." 29 U.S.C. § 1001(a).

Since the SPD's first subsection under "Loss of Benefits" describes a "break in service" which would prevent an "anticipated" benefit from becoming a "vested" benefit, it would be reasonable for an average plan participant like Arnold, who knew his own benefits were vested, to assume that the terms describing potential loss to "anticipated" benefits did not pose any danger to his vested benefits. The SPD thus fails to meet minimum standards of specificity and clarity under 29 U.S.C. § 1022(a)(1) and this circuit's rule in *Stahl v. Tony's Building Materials, Inc.*, 875 F.2d 1404, 1408 (9th Cir.1989) ("[the SPD] must be specific

enough to enable the ordinary employee to sense when there is a danger that benefits could be lost or diminished.").

Even if we construed use of the term "anticipated" as ambiguous, standard contract construction requires that we interpret unclear language against the party who has prepared the writing, *Interpetrol Bermuda Ltd. v. Kaiser Aluminum Intern.*, 719 F.2d 992, 998 (9th Cir.1983), and so we must hold that this section does not limit employer liability for vested benefits.

The concluding section of the SPD, entitled "Termination of the Plan", also fails to limit employer liability. The section reads,

In the event the plan is terminated, any benefits you may have accumulated up to that time will become nonforfeitable, and plan funds accumulated up to the date of termination will be used to provide you with benefits to the extent permitted by the amount then available in the pension fund.

At plan termination, benefits under this plan are insured by the Pension Benefit Guaranty Corporation (PBGC). Generally, the PBGC guarantees most vested normal, early and late retirement benefits (and certain disability and spouse's benefits). However, the PBGC does not guarantee all types of benefits under covered plans, and the amount of benefit protection is subject to certain limitations.

This section makes three points, none of which limits the employer's liability. First, it states that on termination, accumulated benefits become "nonforfeitable." Second, it adds, in the conjunctive, that available plan funds will be used to pay nonforfeitable benefits. Third, the SPD explains that the PBGC insures benefits, but that the PBGC does not always pay the full amount of vested benefits.

Nowhere does this section state that a plan participant's claim to his nonforfeitable benefits is limited to what can be paid by the available plan funds or by the PBGC insurance. As the Supreme Court has noted, "[i]t is self-evident that a claim may remain valid and legally enforceable even though, as a practical matter, it may not be collectible from the assets of the obligor." *Nachman*, 446 U.S. at 371, 100 S.Ct. at 1731. Arnold's claim to his full nonforfeitable benefits is not extinguished by partial payment by an insurer or the exhaustion of plan funds. Absent an express disclaimer of employer liability, the claim to nonforfeitable benefits, created by and under the terms of the plan, remains enforceable against the employer. *Murphy*, 635 F.2d at 236–38; *see also Nachman*, 446 U.S. at 385, n. 35, n. 36, 100 S.Ct. at 1738, n. 35, n. 36.

The employer's liability does not depend on the existence of a bargaining agreement or contract separate from the pension plan; the terms of the plan itself can establish an obligation in the employer, as well as in the plan itself, to pay vested benefits. *Piech v. Midvale–Heppenstall Co.*, 594 F.Supp. 290, 294–96 (ED Pa.1984), *aff'd w'out opinion*, 770 F.2d 1070, 1072 and 1074 (3d Cir.1985) (finding sufficient evidence to reject summary judgment of employer liability to pay unfunded benefits based solely on the terms of a pension plan). Here, under the terms of Arrow's SPD, the employer made an explicit affirmative promise to provide sufficient funding for full payment of vested benefits: "Your employer will make contributions to the plan in amounts determined to be required to provide the benefits as set forth in the plan." SPD at 5. Such language both establishes an obligation in the employer under the plan for payment of vested benefits; and creates in the average plan participant an expectation that vested benefits "as set forth in the plan" would be unaffected by any limitations on the PBGC's insurance of the plan, unless, due to insolvency, the employer were unable to pay. The "Termination of the Plan" section thus also fails to limit the employer's liability or meet the standards of clarity in disclosure required under 29 U.S.C. § 1022.

In passing ERISA, Congress sought to prevent the " 'great personal tragedy' suffered by employees whose vested benefits are not paid when pension plans are terminated.... Congress wanted to ... [make] sure that if a worker has been promised a

defined pension benefit upon retirement—and if he has fulfilled whatever conditions are required to obtain a vested benefit—he actually will receive it." *Nachman,* 446 U.S. at 374–75, 100 S.Ct. at 1733. Solvent employers terminating pension plans might still avoid paying the full amount of vested benefits by early termination and reliance on the minimum insurance guarantees of the PBGC—but only if they explicitly disclaim liability in terms that are comprehensible to the average plan participant. It is instructive that Congress sought to further tighten abuse of early termination by passing, in 1986, a new 29 U.S.C. § 1341, which stated, "A single-employer plan may terminate under a standard termination only if ... when the final distribution of assets occurs, the plan is sufficient for benefit liabilities (determined as of the termination date)." In light of this action, and the whole prior legislative history of ERISA, it is our duty to enforce high standards of disclosure and clarity for any terms which might result in non-payment of vested benefits. *See also* 29 C.F.R. § 2520.102–2 (detailing standards of clarity in summary plan descriptions).

Congress clearly intended to prevent precisely the sort of benefit loss threatened in this case. Mr. Arnold, after 37 years of service to Arrow Transportation Co., stands to lose fully a third of his vested pension. Because Arrow failed to make an enforceable disclaimer of liability in its controlling Summary Plan Description, Arnold is entitled to recover from Arrow the balance of nonforfeitable benefits under his pension plan.

I dissent.