INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL–CIO, DISTRICT LODGE NO. 157, by Richard ROY; and William Young, Monica Fox, Paul Perry, Linda Lance, Carlton Rocker, Kenneth Baker, Francis Szmorlo, Richard Swertfager, Joe Andrewski, in Their Individual and/or Representative Capacity and as Representatives of all Existing and Former Hourly Employees of Rome Cable Corporation, Plaintiffs,

v.

ROME CABLE CORPORATION, Robert P. Tamburrino, Rock E. White, Peter D. Weisse, David E. Harvey, Individually and as Fiduciaries of the Retirement Insurance Plan for Hourly Rates Employees of Rome Cable Corporation, Defendants.

No. 91–CV–765.

United States District Court,
N.D. New York.

Feb. 23, 1993.

Green & Seifter, P.C., Syracuse, NY (Lee Alcott, of counsel), for plaintiffs.

Bond, Scheoneck & King, Syracuse, NY (L. Lawrence Tully, Edward R. Conan, of counsel), Carol Conner Flowe, Washington, DC (Mark Blank, of counsel), Gen. Counsel for the Pension Ben. Guar. Corp. as amicus curiae.

## AMENDED MEMORANDUM– DECISION AND ORDER

SCULLIN, District Judge.

### Procedural Background

The above-captioned case was initiated by the plaintiffs on July 3, 1991 with the filing of the complaint. The defendants have answered the complaint and now have filed a motion for summary judgment, to which the plaintiffs have responded. The Pension Benefit Guaranty Corporation [hereinafter referred to as "PBGC"], on November 12, 1992, filed an application to enter the lawsuit as amicus curiae while simultaneously providing a copy of the brief intended for the court. At oral argument on November 13, 1992, there being no objection by either party, the PBGC was granted leave to appear as amicus curiae and the amicus brief was ordered to be filed. The plaintiffs were given leave to submit a response to the brief filed by the PBGC, which they have since done. In addition, the defendants have filed their reply to the plaintiffs' response. Thus, this motion for summary judgment is now presented to this court for decision.

### Factual Background

Rome Cable Corporation [hereinafter referred to as "Rome Cable"] maintained and sponsored two retirement plans for the benefit of its employees. The first was known as the Retirement Income Plan for Hourly Employees [hereinafter referred to as the "Hourly Plan"] and the second was the Pension Plan for Salaried Employees of Rome Cable Corporation [hereinafter referred to as the "Salaried Plan"]. *See* Plaintiffs' Memorandum of Law at 1.

The Hourly Plan, the plan to which this litigation relates, is a defined benefit pension plan subject to the regulatory oversight of the Internal Revenue Service, the PBGC and the United States Department of Labor. *See* White Affidavit at ¶ 2.

On July 13, 1987, Rome Cable submitted to all participants, the Union, and the PBGC a formal Notice of Intent to Terminate the Hourly Plan under the distress termination provisions of the Employees Retirement Income Security Act (ERISA), more specifically, under the provisions of the Single Employer Pension Plan Amendments Act of 1986 [hereinafter referred to as "SEPPAA"], which is that portion of ERISA that is applicable to the first three

causes of action alleged in the complaint. *See id.* at ¶ 9 & Exhibit 10 annexed thereto.

Pursuant to section 4041(c)(2)(B)(iii)(I) of SEPPAA (codified as 29 U.S.C. § 1341(c)(2)(B)(iii)(I)), the submissions of Rome Cable were reviewed and the distress termination of the Hourly Plan was approved, effective September 14, 1987. *See id.* at ¶¶ 13, 14 & Exhibit 14 annexed thereto. At that time, the Hourly Plan was approximately $14.5 million underfunded.

As is mandated by section 4042 of SEPPAA, a so called "4042 Trustee" was appointed to pay benefits in accordance with the terms of ERISA. In this case, the PBGC was appointed as the "4042 Trustee." *See id.* It is the obligation of the PBGC to maintain and guarantee the plan with respect to its guaranteed benefits. The unguaranteed benefits are to be handled separately by another trustee appointed by the PBGC, the so-called "4049 Trustee," which, in this case, was not appointed until much later in the chronology of events.

Since the distress termination of the Hourly Plan, Rome Cable has continued its business operations and has continued to maintain the Salaried Plan.

On December 9, 1988, the PBGC, as 4042 Trustee, executed an Agreement with Rome Cable which contained the following provisions:

—the PBGC assumed all of the obligations of Rome Cable with respect to payment of guaranteed pension benefits to participants and beneficiaries (*see* Exhibit 16 at 2);

—Rome Cable transferred all assets of the Hourly Plan to the PBGC (*see id.* at 3 ¶ 2);

—Rome Cable gave the PBGC a ten year Promissory Note in the amount of $3 million with accrued interest and secured by a blanket lien on Rome Cable's real and personal property, and a ten-year Profit Sharing interest in Rome Cable (*see id.* at 3–5 ¶ 4);

—the PBGC accepted this consideration as full and complete satisfaction of all the obligations and liabilities of Rome Cable and of its officers, directors and shareholders, to the PBGC with re-

spect to the Hourly Plan and the funding thereof under section 4062 of SEPPAA (29 U.S.C. §§ 1301 et seq.), and released Rome Cable from any and all claims which it may have had against Rome Cable, whether accrued, absolute, contingent or otherwise with respect to the Hourly Plan under sections 4062 and 4068 of SEPPAA (29 U.S.C. §§ 1362, 1368) (*see id.* at 12 ¶ 14).

The plaintiffs commenced this lawsuit on July 3, 1991. In their complaint, the plaintiffs allege seven causes of action:

1) that during the period 1983 through 1987, the defendant Rome Cable failed to fund the Hourly Plan in accordance with terms of the Hourly Plan and with sections 302 and 412 of ERISA (29 U.S.C. §§ 1082 and 1112 respectively), for which they seek $15,009,000.00 together with interest thereon from the date of termination of the Hourly Plan plus costs and attorneys' fees;

2) that Rome Cable terminated the Hourly Plan without paying the funding deficiency then due in violation of section 4062 of SEPPAA (29 U.S.C. § 1362), for which they seek $5,600,821.00 together with interest thereon from the date of termination of the Hourly Plan plus costs and attorneys' fees;

3) that Rome Cable failed to pay the Hourly Plan the contributions required by the collective bargaining agreement so that the benefit commitments promised under the Hourly Plan could be met, as a violation of section 301 of the Labor–Management Relations Act [hereinafter referred to as "LMRA"], for which they seek $15,009,000.00 together with interest thereon from the date of termination of the Hourly Plan plus costs and attorneys' fees;

4, 5 and 7) that the defendant fiduciaries failed to fulfill their obligations to act for the sole benefit of the Hourly Plan pursuant to the mandate of section 404(a)(1) of ERISA (29 U.S.C. § 1104(a)(1)) in that they failed to invest appropriately but rather invested in the Salaried Plan to the detriment of the Hourly Plan for which they seek $12,500,000.00 together with interest

thereon from the date of termination of the Hourly Plan plus costs and attorneys' fees, for each of the three causes of action; and

6) that the defendant fiduciaries failed to fulfill their obligations to act for the sole benefit of the Hourly Plan pursuant to section 404(a)(1) of ERISA in that they failed to take steps to correct their prior fiduciary breaches, for which they seek $12,500,000.00 together with interest from the date of termination of the Hourly Plan plus costs and attorneys' fees.

A local attorney was appointed the 4049 Trustee by the PBGC in July of 1992 to negotiate with and collect from Rome Cable the outstanding unguaranteed benefit commitments, if any, under the Hourly Plan on behalf of its participants and beneficiaries. *See* White Affidavit ¶¶ 16, 17. On September 11, 1992, the Section 4049 Trustee commenced an action in the Northern District of New York to collect the amounts owed by Rome Cable to the Hourly Plan as unguaranteed benefits. *See* Index No. 92–CV–1181(NPM).

## Discussion

The Hourly Plan here was maintained pursuant to the provisions of the Single Employer Pension Plan Amendments Act of 1986 (SEPPAA). SEPPAA, in this case, provides not only the procedural framework for the plan itself but also provides the procedural mechanism for the distress termination of the Hourly Plan, which is the gravamen of this motion and case.

In accomplishing a distress termination for a single employer pension plan, at the time of this plan termination, SEPPAA provides that after the requisite notices of termination are provided to the plan's participants and beneficiaries, and after the PBGC approves of the distress termination, the PBGC steps in and takes over the payments of the vested, guaranteed portion of the plan's benefits.

In this case, pursuant to the provisions of SEPPAA, the PBGC, in a written argument with Rome Cable, was appointed the Section 4042 Trustee. In being appointed 4042 Trustee, the PBGC took over the administration of the vested, guaranteed portion of the plan. *See* Exhibit 14 annexed to White Affidavit. Subsequently, pursuant to its authority under 29 U.S.C. § 1367, the PBGC entered into a settlement agreement with the defendants whereby the defendants were released from all obligations and liabilities relative to the vested, guaranteed benefits. *See* Exhibits 14 & 16 annexed to White Affidavit.

The vested, unguaranteed benefits of the Hourly Plan amount to approximately $619,750. These benefits are not statutorily protected by the PBGC. Rather, it is the obligation of the Section 4049 Trustee to attempt to recoup those funds from the plan sponsor, Rome Cable. As stated, the 4049 Trustee has initiated an action against Rome Cable for that purpose. *See* 92–CV–1181.

The defendants have moved for summary judgment with respect to each of the causes of action alleged by the plaintiffs in their complaint, alleging various grounds for the relief sought. Each ground for summary judgment will be considered and addressed *seriatim:*

## I

The defendants allege that the plaintiffs are precluded from seeking what amounts to a double recovery since the PBGC is obligated to them with respect to the vested, guaranteed portion of their benefits. By virtue of the provisions of SEPPAA, the defendants also allege, the plaintiffs are precluded from any recovery from these defendants since these defendants have been released from any and all liability as relates to the Hourly Plan and are liable now only to the PBGC and the 4049 Trustee.

With respect to these grounds, the defendants do not specify as to which causes of action they seek summary judgment. However, upon a review of the complaint, it would appear that they are seeking summary judgment with respect to the first, second and third causes of action.

In response, the plaintiffs contend that the defendant made them three promises, the breach of which result in liability. Thus, they are alleging what amounts to a breach of promise or contract. The plaintiffs' contentions may be summarized as follows:

1) that the Hourly Plan constitutes an offer by Rome Cable of a unilateral contract to pay benefits which was accepted and became binding when the plaintiffs, as employees, performed services for Rome Cable;

2) that Rome Cable promised employment benefits in writing and never notified the plaintiffs of its intent to limit its liability in that regard; and

3) that in the collective bargaining agreement, Rome Cable promised to provide pension benefits in accordance with the Hourly Plan.

■ In support of their contention, the plaintiffs cite to a litany of cases, all but one of which pre-date SEPPAA [1] and none of which addresses the primary issue: whether the plaintiffs can recover against the defendants for benefits that are being paid and have been guaranteed by the PBGC.

In order to qualify for a distress termination under SEPPAA, the employer must satisfactorily demonstrate that if it is required to continue to fund the pension plan, it will collapse, thereby causing not only the termination of the pension plan but also the termination of the business and loss of employment to the participants. SEPPAA § 4041(c)(2)(B)(iii), *codified as* 29 U.S.C. § 1341(c)(2)(B)(iii). Thus, the scheme for a distress termination wherein the PBGC steps in as guarantor is intended to ensure the benefits of the pension plan to the participants and beneficiaries and possibly to salvage the employer's business, thereby safeguarding the employment of the partic-

ipants. *See Aldridge v. Lily–Tulip, Inc.,* 953 F.2d 587, 591 (11th Cir.1992); H.Rep. No. 99–300, 99th Cong., 2nd Sess. 278 (1985), *reprinted in* 1986 U.S.C.C.A.N. 42, 756, 929, 941 (1986).

■ The defendants, in urging summary judgment on these causes of action, do not cite the court to any authority squarely on point with the issue here presented. However, as the defendants suggest, it would appear that the principles of the law of trusts must be applied. The PBGC as Trustee, has the ability to bind the trust beneficiaries (the plaintiffs here) thereby releasing the obligations of the original debtor (Rome Cable) as an accord and satisfaction. III Scott on Trusts § 142 (4th ed.); Restatement (Second) of Trusts § 192 (1987); *Hun v. Van Dyck,* 26 Hun 567 (1882), *aff'd without opinion,* 92 N.Y. 660 (1983). Having entered into a statutorily permitted settlement agreement with Rome Cable and now being the Hourly Plan administrator and 4042 Trustee, the PBGC stands in the shoes of the defendants.

Just like with any other trust beneficiary, if the plaintiffs here feel that the settlement agreement executed between the PBGC and Rome Cable was imprudent or in some way compromised or diminished their rights, their recourse is to sue the *PBGC* as the Hourly Plan trustee. IV Scott on Trusts § 279A (4th ed.); Restatement (Second) of Trusts §§ 280–82 (1987); *Bowen v. United States Postal Serv.,* 459 U.S. 212, 243, 103 S.Ct. 588, 605–606, 74 L.Ed.2d 402, 426 (1983); *Teamsters Local 391 v. Terry,* 494 U.S. 558, 567, 110 S.Ct. 1339, 1346, 108 L.Ed.2d 519, 529 (1990).

The plaintiffs further argue that the PBGC is acting as a guarantor and not a trustee, in which case the law of guaranty would apply. As such, they contend that they are not seeking a double recovery as

---

**1.** The only post-SEPPAA case cited by the plaintiffs is *In re Chateaugay Corp.,* 87 B.R. 779 (S.D.N.Y.1988), *aff'd sub nom. PBGC v. LTV Corp.,* 875 F.2d 1008 (2d Cir.1989), *rev'd,* 496 U.S. 633, 110 S.Ct. 2668, 110 L.Ed.2d 579 (1990). This case is distinguishable on its facts from the case *sub judice.* First, the *LTV* case involved defined benefit pension plans, not relating to

pension benefits in a distress termination of a retirement plan. Secondly, there was no Section 4049 Trustee involved in the *LTV* case, as there is here, and, therefore, there was no opportunity for the court to determine whether that mechanism precludes suit by the plan participants and beneficiaries against the plan's sponsor once such a trustee has been appointed.

the defendants would have the court believe, but are merely seeking to protect and ensure their rights as against the defendants within the period of the statute of limitations should the PBGC fail in its statutory obligation to pay them their vested, guaranteed benefits. Were this the case, however, the plaintiffs, it would seem, would be seeking merely declaratory relief; that is not the case and would not be appropriate even if that were the only relief the plaintiffs sought.

The SEPPAA scheme is intended to limit employer liability to the PBGC, which is in turn liable to the terminated plan's participants and beneficiaries to the full extent of the funding deficiency with respect to the guaranteed benefits. In so doing, the employer, who is then no longer liable to the plan participants and beneficiaries, may work out an agreement with the PBGC for payment of the funds out of which the benefits are payable, thereby utilizing its limited assets so as to enure its continued operation and thus continued employment of plan participants. Thus, the goals of the statutory scheme would be satisfied. *See Nachman Corp. v. PBGC,* 446 U.S. 359, 380, 100 S.Ct. 1723, 1736, 64 L.Ed.2d 354, 370 (1980). It would be counterproductive indeed to find that the employer would, following a distress termination, be liable not only to the PBGC but also remain liable to the plan participants and beneficiaries.

■ In this instance, there is further support for this conclusion found in the terms of the Hourly Plan itself. Section 8.03 of the Hourly Plan provides that "a Participant or Beneficiary with a nonforfeitable [(vested)] right under this Plan shall not have any recourse toward satisfaction of such nonforfeitable right from other than Plan assets or the Pension Benefit Guaranty Corporation." Section 104(a), and (b) of ERISA (codified as 29 U.S.C. §§ 1024(a), (b)), *see also* 29 C.F.R. §§ 2520.-102–2(a), 2520.104a–3(a) & 2520.104b–2(b),

requires that an employer file a summary plan description [hereinafter referred to as the "SPD"] with the Department of Labor. The summary plan description is just as its name indicates, a summary of the pension plan. In this case, it is undisputed that Rome Cable, while having prepared an SPD, failed to file it with the Department of Labor. Notwithstanding, all plan participants were provided with a copy of the plan.[2]

There are two provisions in the SPD which give notice of the limitation of liability. The first is encaptioned "CERTAIN INSURED BENEFITS" and reads as follows:

> "Benefits under this plan are insured by the Pension Benefit Guaranty Corporation (PBGC) if the plan terminates. Generally, the PBGC guarantees most Vested Normal Age Retirement Benefits, Early Retirement Benefits, and certain disability and survivor's pensions. **However, PBGC does not guarantee all types of benefits under covered Plans, and the amount of benefit protection is subject to certain limitations."**

Exhibit B at 11 annexed to Hoveman Affidavit (emphasis added). *Compare Arnold v. Arrow Transp. Co.,* 926 F.2d 782, 786 (9th Cir.1990) (language virtually identical to that emphasized found to be an enforceable disclaimer). The second is encaptioned "PLAN CONTINUANCE," and reads as follows:

> "The Company expects and intends to continue the Pension Plan indefinitely, but reserves the right to change or terminate it subject to collective bargaining. **If the Plan should be ended, you would become fully vested in all benefits credited to you up to the date to the extent then funded. And, the assets of the Plan would be distributed in the order of priority set forth in the Plan text or as provided by law."**

Exhibit B at 12 annexed to Hoveman Affidavit (emphasis added). *Compare Arnold*

---

**2.** The plaintiffs challenge the use of the SPD on the ground that it was not filed with the Department of Labor as is required by the terms of ERISA. *See* ERISA §§ 104(a)–(b), codified as 29 U.S.C. §§ 1024(a)–(b); 29 C.F.R. §§ 2520.-102–2(a), 2520.104a–3(a) & 2520.104b–2(b).

Failure to file an SPD must not be considered actionable, however, where the plan participants and beneficiaries have actual notice of the SPD, as is the case here. *See Rubin v. Decision Concepts Inc.,* 566 F.Supp. 1057, 1059 (S.D.N.Y. 1983).

*v. Arrow Transp. Co.*, 926 F.2d at 786 (similar language to that emphasized found to be enforceable).

In addition, there is a provision in the SPD which directs plan participants and beneficiaries to the Hourly Plan itself. That provision, which is encaptioned "WHAT YOU HAVE A RIGHT TO EXPECT," reads as follows:

> "ERISA provided that all Plan participants shall be entitled to: [e]xamine, without charge, at the Plan Administrator's office, and at other specified locations such as your Personnel Department, all Plan documents, copies of all documents filed by the Plan with the U.S. Department of Labor such as detailed annual reports and plan descriptions [and] [o]btain copies of all Plan documents and other Plan information upon written request to the Plan Administrator."

Exhibit B at 13 annexed to Hoveman Affidavit.

Contrary to the position taken by the plaintiffs, these provisions, when considered together, are not ambiguous nor do they create confusion.

Thus, given the purposes of the distress termination procedure as articulated in the applicable statutes, and in light of the law of trusts, the plaintiffs are precluded from suing the plan sponsor, Rome Cable, as their debtor. The defendants' motion for summary judgment as it relates to the first, second and third causes of action is hereby granted and those three causes of action are hereby dismissed.

## II

The defendants contend that the plaintiffs' third cause of action, which sounds in section 301 of the Labor–Management Relations Act, is barred due to the plaintiffs' failure to comply with the terms of the collective bargaining agreement.

Article 21 of the collective bargaining agreement between the Union and Rome Cable provides that "[a]ll matters of dispute that may arise between the Union and the Company under the terms of this Agreement shall be handled" through grievance "submitted within five working days of the alleged violation of contract" and arbitration. Exhibit 11 at 2 annexed to White Affidavit. It is undisputed that a grievance was never filed in this instance.

The plaintiffs argue that this dispute is not subject to grievance and arbitration because it relates to the Hourly Plan, which they term "separate and collateral" to the collective bargaining agreement. Dissecting this argument, then, it would appear the plaintiffs are not alleging that there has been a breach of the collective bargaining agreement but rather are alleging that there has been a breach of a "separate and collateral" agreement.

 Contrary to the contention of the plaintiffs, however, the Hourly Plan is not a separate, collateral agreement between the Union and Rome Cable. *See Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985); *Bressette v. Internat'l Talc Co.*, 527 F.2d 211, 216 (2d Cir.1975). *Cf. NLRB v. Vanguard Tours, Inc.*, 981 F.2d 62 (2d Cir.1992) ("When a contract 'annexes' as an essential part the terms of another instrument, the other instrument is deemed part of the contract."); *Cornell Univ. v. UAW Local 2300*, 942 F.2d 138 (2d Cir.1991) (letter was separate and collateral to the collective bargaining agreement). It is an integral part of the collective bargaining agreement and, as such, any disputes relating to it are subject to the grievance and arbitration requirements of article 21 of the agreement. Thus, inasmuch as the Hourly Plan is an integral part of the collective bargaining agreement, and inasmuch as the parties have not engaged in the requisite grievance and arbitration process, the time for which has now more than elapsed, the plaintiffs are barred from bringing this cause of action. *See Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652–53, 85 S.Ct. 614, 616, 13 L.Ed.2d 580, 582–83 (1965). Even were the plaintiffs not precluded by the statute of limitations, the appropriate action would be against the Union for breach of its obligation of fair and reasonable representation, in which case, they could include a hybrid suit against the defendants under

section 301 of the Labor–Management Relations Act. *See DelCostello v. Internat'l Brotherhood of Teamsters,* 462 U.S. 151, 164–65, 103 S.Ct. 2281, 2290–91, 76 L.Ed.2d 476, 488–89 (1983); *United Parcel Serv., Inc. v. Mitchell,* 451 U.S. 56, 66–67, 101 S.Ct. 1559, 1566, 67 L.Ed.2d 732, 742–43 (1981); *Miller v. U.S. Postal Serv.,* 792 F.Supp. 4, 6 (N.D.N.Y.1992); *see also Meehan v. U.S. Postal Serv.,* 792 F.Supp. 18, 21 (E.D.N.Y.1992).

■ The plaintiffs further argue that the grievance and arbitration requirement is inapplicable to those plaintiffs who were not subject to the collective bargaining agreement because they were already receiving Hourly Plan benefits as retirees. This argument is equally unpersuasive since retirees can elect to sue on their own or to be represented by the Union, but if they chose the latter, then they are bound by the limitations that bind the Union. *See UAW v. ACME Precision Prod., Inc.,* 515 F.Supp. 537 (E.D.Mich.1981); *Textile Workers Local 129 v. Columbia Mills,* 471 F.Supp. 527 (N.D.N.Y.1978). Here, those retiree plaintiffs have joined with the Union and are thus bound by the terms of the collective bargaining agreement.

Thus, for all of these reasons, the defendants' motion for summary judgment with respect to the third cause of action is hereby granted and that cause of action is hereby dismissed on this basis as well as those previously discussed in I, *supra.*

### III

■ The defendants contend that the fourth, fifth, sixth and seventh causes of action, all of which allege a breach of the defendants' fiduciary duties as set out in the provisions of ERISA, must be dismissed as being time-barred.

Prior to December 31, 1987, section 413 of ERISA, 29 U.S.C. § 1113 provided for a three year statute of limitations for a breach of duty knowledge of which was either actual or constructive. Constructive knowledge was based upon "a report **from which the plaintiff could reasonably be expected to have obtained knowledge of such breach or violation** was filed with

the Secretary [of Labor]...." 29 U.S.C. § 1113(a)(2)(B). Effective December 31, 1987, this section was amended to eliminate the constructive knowledge provision of the statute. In so doing, Congress specifically provided that the elimination of the constructive knowledge provision was to apply only to those reports which were required to be filed after the effective date; thus, the statutory revision was to be given prospective, and not retroactive, application. *See* Omnibus Budget Reconciliation Act of 1987, Pub.L. No. 100–203, § 9342, 101 Stat. 1330, 1330–371 (1987).

In this case, as the defendants set out in their moving and reply papers, there were a litany of events that provided or should have provided the plaintiffs with knowledge of the alleged breach. Those events can be summarized as follows:

1) Rome Cable obtained minimum funding waivers for the years 1983–1987;

2) disclosure during collective bargaining negotiations in February and March of 1987 of the Hourly Plan's distressed financial condition, with correspondence to each employee to that effect;

3) the Union president was informed of the results of an investigation conducted by a law firm hired expressly to investigate the proposal to terminate the Hourly Plan;

4) in May of 1987, the Union hired a financial consultant to review the Hourly Plan, which was done and encompassed a review not only of the Hourly Plan but of the corporate books as well;

5) the National Labor Relations Board, which investigated Rome Cable at the Union's request, determined that the Union knew of the funding waivers prior to the collective bargaining negotiations in March and April of 1987;

6) the Union hired attorneys who were involved in the distress termination process in May through August of 1987;

7) on December 2, 1986, the Internal Revenue Service notified the President of Rome Cable that the IRS had issued minimum funding waivers for both the Salaried Plan and the Hourly Plan, copies of which

were forwarded to the Department of Labor on March 6, 1987 and to the attorney for the plaintiff union on May 21, 1987;

8) on July 13, 1987, the Retirement Plan Committee notified by mail every participant of its intent to terminate the plan pursuant to ERISA;

9) thereafter, a union representative filed a complaint including therewith a copy of the IRS letter advising of the minimum funding waivers, with the Department of Labor to the effect that the fiduciaries had breached their responsibilities to the Hourly Plan in maintaining the Salary Plan to the detriment of the Hourly Plan with the result being a distress termination of the latter;

10) the issue of comparative underfunding of the two plans was discussed during the 1987 collective bargaining negotiations; and

11) Rome Cable specifically mentioned the IRS letter in its final pension proposal sent to employees and the union on April 1, 1987.

*See* Memorandum of Law at 22–25; White Affidavit; Exhibits 3, 4 & 5 at 2 annexed to White Affidavit; Defendants' Reply Memorandum of Law at 25–28.

Despite the plaintiffs' contention that the breach by the defendants cannot be so easily determined, it is clear that they knew or should have known of any alleged breach at least at the time that the Hourly Plan was terminated, in September of 1987. Inasmuch as this lawsuit was not commenced until July 3, 1991, these four causes of action are time barred.

For these reasons, then, the defendants' motion for summary judgment as it relates to the fourth, fifth, sixth and seventh causes of action is hereby granted and those causes of action are hereby dismissed.

## IV

■ The plaintiffs, in their complaint, generally ground jurisdiction for their case on various provisions:

1) under sections 502 and 4070 of ERISA, 29 U.S.C. §§ 1132 and 1370 respectively;

2) under 28 U.S.C. § 1331(a) in that the action arises under the laws of the United States, specifically under ERISA (and SEPPAA) and under the Labor–Management Relations Act of 1947;

3) under section 301 of the Labor–Management Relations Act, 29 U.S.C. § 185(a); and

4) under 28 U.S.C. § 1337, amount in controversy.

Without specifically indicating the applicability of this argument to any particular cause of action, the defendants contend that there is no jurisdiction for the lawsuit under section 4070 of ERISA. They contend that the plaintiffs have not made out any of the underlying allegations necessary to invoke 4070 jurisdiction and therefore there can be no liability on the part of any of the defendants for any conduct in violation of any of the enumerated provisions of section 4070.

Section 4070 of ERISA reads as follows: "Any person who is with respect to a single-employer plan a fiduciary, contributing sponsor, member of a contributing sponsor's controlled group, participant, or beneficiary, and is adversely affected by an act or practice of any party (other than the corporation) in violation of any provision of section 1341 [termination of single-employer plans], 1342 [institution of termination proceedings by corporation], 1362 [liability for termination of single-employer plans under a distress termination or a termination by corporation], 1363 [liability of substantial employer for withdrawal from single-employer plans under multiple controlled groups], 1364 [liability on termination of single-employer plans under multiple controlled groups] or 1369 [treatment of transactions to evade liability; corporation reorganization] of this title, or who is an employee organization representing such a participant or beneficiary so adversely affected for purposes of collective bargaining with respect to such plan, may bring an action—

"(1) to enjoin such act or practice, or (2) to obtain appropriate equitable relief...."

29 U.S.C. § 1370(a).

In light of the above determinations, the defendants' position is meritorious and their motion for summary judgment in this regard is hereby granted.

### Conclusions

The defendants' motion for summary judgment is granted in its entirety. The benefits which the plaintiffs seek in their first three causes of action are now the obligation of the PBGC (as 4042 Trustee) and the 4049 Trustee. The third cause of action, brought pursuant to section 301 of the Labor–Management Relations Act, is barred by the plaintiffs' failure to comply with the grievance and arbitration provision of the collective bargaining agreement. The fourth through the seventh causes of action, inclusive, are barred by the applicable statute of limitations. Finally, in light of these determinations, jurisdiction cannot be predicated upon section 4070 of ERISA.

IT IS SO ORDERED.