**Mary Barker MATLOCK, Administratrix of the Estate of James Robert Barker, Jr., Deceased; and Patricia L. McDonough, Plaintiffs,**

v.

**PITNEY–BOWES, INC. and Pitney–Bowes, Inc. Employee Benefits Committee, Defendants.**

**No. 1:08–CV–696.**

United States District Court, M.D. North Carolina.

Sept. 14, 2011.

---

Norman B. Smith, Smith James Rowlett & Cohen, Stanley Eric Speckhard, Alexander Ralston Speckhard & Speckhard, L.L.P., Greensboro, NC, for Plaintiff.

Julie Kerr Adams, Littler Mendelson, Charlotte, NC, for Defendant.

## MEMORANDUM ORDER

THOMAS D. SCHROEDER, District Judge.

This is an action for retirement benefits pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1101 et *seq.* ("ERISA"), in which the court previously granted summary judgment to Defendants Pitney Bowes Inc.[1] ("Pitney Bowes") and Pitney Bowes Inc. Employee Benefits Committee ("Benefits Committee"). *Matlock v. Pitney–Bowes, Inc.,* 751 F.Supp.2d 823 (M.D.N.C.2010). Defendants now move for costs and attorneys' fees (Doc. 27), and Plaintiffs oppose the motion (Doc. 32). For the reasons set forth herein, the motion for costs will be granted, and the motion for attorneys' fees will be denied.

## I. BACKGROUND

The facts are set forth in the court's prior memorandum opinion, 751 F.Supp.2d 823, and need not be detailed here. In short, Plaintiffs Mary Barker Matlock, administratrix of the estate of James Robert Barker, Jr. ("Barker"), and Patricia L. McDonough ("McDonough") brought this action under ERISA seeking to recover benefits allegedly due them on behalf of Barker, who is deceased, under Pitney Bowes' defined benefits pension plan ("the Plan").

Barker was employed with Pitney Bowes for 37 years when on February 7, 2005, he took a medical leave of absence following a diagnosis of late stage colon cancer and began receiving short term disability benefits. Five months later, these benefits were converted to long term disability benefits. On several occasions following his cancer diagnosis, Barker consid-

---

1. Defendants have noted previously that the proper corporate name is Pitney Bowes Inc., with no hyphen or comma.

ered retirement and requested that Pitney Bowes send different packages of the proposed paperwork to effectuate it as of the time, which the company did. Barker did not execute these documents largely because, it appears, he wished to have his employer provide for his cancer treatment under his continuing long term disability benefits.

However, on July 31, 2006, as his illness worsened, Barker notified his Pitney Bowes disability case manager that he decided to retire effective October 1, 2006. On August 10, 2006, Pitney Bowes sent Barker a retirement packet, which Barker executed on August 29, 2006, and which calculated his benefits (in the amount of $305,182.33) for a retirement effective October 1, 2006.

Sadly, Barker died on September 12, 2006, the same day Pitney Bowes received his executed forms.

Following Barker's death, Plaintiffs inquired of Pitney Bowes as to their right to obtain his retirement benefits under the Plan. Pitney Bowes responded that because Barker died prior to his retirement/Annuity Starting Date of October 1, 2006, no benefits were due under the Plan.

Plaintiffs then filed the present action in state court, and Defendants removed it to this court. The parties agreed to stay the litigation while Plaintiffs exhausted their administrative remedies by appealing the denial of their claim to the Benefits Committee. (Doc. 13.) The Benefits Committee, after considering Plaintiffs' arguments, denied their claim at a May 5, 2009, meeting; the decision was explained in a May 27, 2009 letter to Plaintiffs. (Administrative Record at 113–56, 161–64.) The Benefits Committee concluded that during the time Barker received short term and long term disability benefits and up until his death on September 12, 2006, he remained an active employee of Pitney Bowes. Because he elected his retire-

ment/Annuity Starting Date of October 1, 2006, and was unmarried at the time of his death, the Benefits Committee concluded, Barker was not entitled to any benefits under the Plan. (*Id.* at 162–64.)

Defendants then moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 on the ground that the Plan unambiguously provides that Plaintiffs were not entitled to any benefits. The court granted Defendants' motion and entered Judgment against Plaintiffs. *Matlock,* 751 F.Supp.2d 823.

Defendants now move for an award of attorneys' fees in the amount of $35,315.80 and costs. (Doc. 27.)

## II. ANALYSIS

### A. Attorneys' Fees

▮ "In an ERISA action, a district court may, in its discretion, award costs and reasonable attorneys' fees to either party under 29 U.S.C. § 1132(g)(1), so long as that party has achieved some degree of success on the merits." *Williams v. Metro. Life Ins. Co.,* 609 F.3d 622, 634 (4th Cir.2010) (quoting *Hardt v. Reliance Std. Life Ins. Co.,* — U.S. —, 130 S.Ct. 2149, 176 L.Ed.2d 998 (2010)). A successful party enjoys no presumption in favor of an attorneys' fees award, however. *Id.* at 635. Rather, the court should consider five factors set out by the Fourth Circuit in *Quesinberry v. Life Insurance Co. of North America,* 987 F.2d 1017 (4th Cir.1993) (en banc):

(1) degree of opposing parties' culpability or bad faith;

(2) ability of opposing parties to satisfy an award of attorneys' fees;

(3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances;

(4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and

(5) the relative merits of the parties' positions.

*Id.* at 1029. These five factors provide only "general guidelines" and not a "rigid test." *Id.* No single factor is necessarily decisive, nor will all be appropriate in every case; yet, "together they are the nuclei of concerns that a court should address"' in applying § 1132(g)(1). *Id.* (quoting *Iron Workers Local # 272 v. Bowen,* 624 F.2d 1255, 1266 (5th Cir.1980)). In considering whether to award attorneys' fees, the court should of course be mindful of the remedial purposes of ERISA "to protect employee rights and secure effective access to federal courts." *Williams,* 609 F.3d at 636.[2]

██ In this case, there is no dispute that Defendants, in whose favor the court granted summary judgment, achieved "some degree of success on the merits." Thus, the question is whether the court should exercise its discretion to award attorneys' fees to Defendants. Defendants argue that factors 1, 3, and 5 weigh in their favor, and they contend that while the court's decision "may not directly benefit all the participants and beneficiaries under the Plan," factor 4 favors them because "it reaffirms a number of significant legal principles regarding ERISA." (Doc. 28 at 6.) Plaintiffs argue that factors 1 through 4 favor them. That is to say, Plaintiffs believe they acted in good faith (or at least without bad faith or culpability). Plaintiff McDonough, who contends she is 62, unmarried, and as an hourly worker earns $15.26/hour, would have to liquidate assets to pay any award. Mat-

lock concedes that she could pay an award in the amount requested as long as it was paid out of Barker's estate (which amount is not provided, but which she had hoped to devote to her retirement). Plaintiffs also contend that an award against them would wrongfully deter other participants and beneficiaries from perfecting claims for benefits. Finally, Plaintiffs argue that they raised substantial issues in their claim, including facts they contend established a serious question whether they should have been awarded Barker's $305,182.33 accrued retirement (which he had earned as a result of decades of employment with Pitney Bowes and would have been paid but for his death 19 days prematurely), and the Plan's potential conflict of interest in exercising its discretion. (Doc. 32.)

██ As to the first factor, the court finds that there is no showing that Defendants acted with bad faith or culpability. Bad faith and culpability "require more than mere negligence or error.'" *Carolina Care Plan, Inc. v. McKenzie,* 467 F.3d 383, 390 (4th Cir.2006) (quoting *Wheeler v. Dynamic Eng'g, Inc.,* 62 F.3d 634, 641 (4th Cir.1995)). Defendants point to the fact that this lawsuit was stayed while Plaintiffs were permitted to pursue an administrative appeal of the plan administrator's denial of their claim and that thereafter Defendants' counsel wrote Plaintiffs to urge them to withdraw their administrative appeal and this litigation. However, Plaintiffs' refusal to accept counsel's urgings or even an adverse administrative decision do not rise to the level of bad faith or culpability on this record. Thus, while Defendants' merits position was much stronger, this factor does not weigh strongly in favor of an award.

---

**2.** This court also mandates that the parties meet and confer as to any attorneys' fee request in an attempt to resolve the dispute. L.R. 54.2. The parties report that they have complied with this requirement.

Consideration of the second factor—ability to pay—should be undertaken "with due regard for the type of payor and the nature of the ERISA claim." *Quesinberry*, 987 F.2d at 1030 n. 12 (citing *Reinking v. Philadelphia Am. Life Ins. Co.*, 910 F.2d 1210, 1218 (4th Cir.1990)). Defendants concede they "have no information regarding Plaintiffs' ability to satisfy an award of attorneys['] fees." (Doc. 28 at 6.) Yet, through the information provided by Plaintiffs (albeit not in admissible form) which is uncontested, the court finds that a fee award would be a hardship on Plaintiff McDonough, who is an hourly worker who would have to liquidate assets to satisfy it. *Arnold v. Arrow Transp. Co. of Delaware*, 926 F.2d 782, 787 (9th Cir.1991) (denying attorneys' fee award in part based on fact that plaintiff was a retired truck driver whose ability to pay was "questionable"). In addition, even though Plaintiff Matlock is candid that Barker's estate would have sufficient resources to pay an award in the amount requested, it is not clear what effect that would have on the estate. To be sure, no Plaintiff has been shown capable of bearing an award in the same fashion as a corporate entity. *Cf. Quesinberry*, 987 F.2d at 1030 n. 12 (noting that the opposing party was "similarly situated" as an insurance company). Moreover, the type of claim here involved clearly accumulated retirement from Barker's decades of work that was forfeited only because he died prematurely before his October 1, 2006 retirement date. If this factor favors Defendants, therefore, it only modestly does so and only as to the estate.

Defendants argue that an award of attorneys' fees would "deter future plaintiffs from continuing to pursue claims that are so clearly without factual or legal merit." (Doc. 28 at 6.) Defendants' characterization of the merits aside, the court does not find that an award would deter others from bringing such suits. *Arnold*, 926 F.2d at 787 (noting that "any such award would

not have a deterrent effect against others bringing such suits"). This is so partly because the facts of this case were very unusual. Barker requested, and Pitney Bowes delivered to him, multiple retirement packages designed for differing retirement dates as he attempted to coordinate his retirement to coincide with the end point of his cancer treatment. Moreover, the related insurance forms from Metropolitan Life Insurance Company had a box that Barker checked that permitted him to direct that he obtain his retirement funds "immediately." Had Barker lived 19 more days, he (and Plaintiffs) would have been entitled to the significant retirement benefits he had earned. This scenario is unlikely to recur frequently. Though Plaintiffs' case was not strong, the court finds that entering an award against them here would be inconsistent with furthering ERISA's important remedial purpose of protecting beneficiaries of private pension plans. *Nachwalter v. Christie*, 805 F.2d 956, 962 (11th Cir.1986) (noting that "[a]dherence to this policy often counsels against charging fees against ERISA beneficiaries since private actions by beneficiaries seeking in good faith to secure their rights under employee benefit plans are important mechanisms for furthering ERISA's remedial purpose"). Thus, this factor does not weigh in favor of an award.

Defendants acknowledge that they did not seek to benefit all participants and beneficiaries under the Plan but argue that they "reaffirm[ed] a number of significant legal principles regarding ERISA including, among other things, the proper standard of review, the effect of an alleged conflict of interest and the obligation of the Benefits Committee to enforce the terms of the Plan as written." (Doc. 28 at 6.) It is true that defense of the lawsuit did not benefit any plan participant or beneficiary. *Izzarelli v. Rexene Products Co.*, 24 F.3d 1506, 1526 (5th Cir.1994) (denying an at-

torneys' fee award where court found "no evidence that ... the Bank sought (by its actions in *defending* this suit) to benefit the participants or beneficiaries of the Plan or that it sought to resolve an important question under ERISA"). No significant legal question regarding ERISA was resolved in the case. Indeed, Pitney Bowes contends only that prior rules were "affirmed" by its defense of the action. In the end, Defendants sought to defend the decision to deny the claim, and the court applied a straightforward analysis of existing case law to the facts underlying Barker's employment and illness. Therefore, this factor does not weigh in favor of Defendants.

Finally, the relative merits of the parties' positions weighs in favor of Defendants who, with the exception of the issue of conflict of interest, had the much more persuasive positions on both the facts and the law. The court previously addressed the merits at length in its memorandum opinion. Suffice it to say that even though Defendants prevailed, Plaintiffs' positions were not totally without merit. In particular, Plaintiffs' claim rested heavily on whether the Plan provided sufficient terminology to grant the Benefits Committee authority to exercise its discretion in making its decisions and whether, in doing so, it operated under a conflict of interest. To award attorneys' fees largely on the basis of Defendants' stronger positions, however, would essentially turn the test into a "prevailing party" analysis, and there is no such presumption in ERISA fee award determinations.

In weighing all of the above and reviewing the total record, the court concludes that its discretion would be best exercised by declining an award of attorneys' fees to Defendants. Therefore, Defendants' motion as it pertains to attorneys' fees will be denied.

**B. Costs**

 Defendants do not separately discuss the legal basis for its request for costs. Federal Rule of Civil Procedure 54(d) provides that in the absence of a federal statute to the contrary, costs "should be allowed to the prevailing party." Fed.R.Civ.P. 54(d). The Fourth Circuit has affirmed that this rule creates a presumption in favor of awarding costs to the prevailing party. *Teague v. Bakker*, 35 F.3d 978, 996 (4th Cir.1994). ERISA, too, permits the court to award costs in its discretion, "but the statute does not alter the general rule in favor of awarding costs to prevailing parties." *Williams*, 609 F.3d at 636.

 Here, Defendants are the prevailing parties, and they are entitled to a presumption in favor of an award of costs. In light of the Defendants' position on the merits, the court concludes that they should be awarded their costs.

**III. CONCLUSION**

For the reasons noted herein, therefore,

IT IS ORDERED that Defendants' Motion for Costs and Attorneys' Fees (Doc. 27) is GRANTED IN PART, AND DENIED IN PART: Defendants' motion for attorneys' fees is DENIED; and Defendants' motion of costs is GRANTED and Defendants' costs shall be taxed against Plaintiffs.