Glenn D. THESENVITZ,
et al., Plaintiffs,

v.

KAISER ENGINEERS,
et al., Defendants.

No. CS–91–243–FVS.

United States District Court,
E.D. Washington.

May 26, 1992.

Alexander J. Skalbania, Critchlow & Williams, Richland, Wash., for plaintiffs.

Stanley J. Bensussen, Kaiser Engineers Hanford, Richland, Wash., Marvin L. Gray, Jr., Davis Wright Tremaine, Seattle, Wash., for defendants.

## MEMORANDUM OPINION

VAN SICKLE, District Judge.

Plaintiffs in this case are Glenn D. Thesenvitz, Kenneth L. Wilson, Donald J. Heberlein, James E. Berwick, Ferrin K. Walker, Donald E. Palmer and Norma Stark as the personal representative for the estate of Lawrence R. Stark. The decedent, Lawrence R. Stark, and all of the other Plaintiffs are retired employees of Kaiser Engineers Hanford Company.[1] The Plaintiffs are bringing this action pursuant to 29 U.S.C. § 1001 et seq., the Employee Retirement Income Security Act (ERISA), and a theory of equitable estoppel, to reinstate the monthly pension benefits that were represented to them prior to retirement.

The Defendants are the Kaiser Engineers Hanford Company ("KEH"), the Kaiser Engineers Hanford Retirement Plan ("Plan"), and the Administrative Committee for the Kaiser Engineers Hanford Retirement Plan ("Committee"). The Defendant Plan counterclaims against Plaintiffs seeking repayment for alleged over-

payments from the Plan because of a mistake in computation.

This Court has jurisdiction over the parties and the subject matter of this lawsuit pursuant to 28 U.S.C. § 1331. Venue properly lies in the Eastern District of Washington.

The Court concludes that the Plaintiffs are entitled to reinstatement of the retirement pension benefits at the level represented to them in 1988 and the level they began receiving benefits when they retired in 1988 or 1989.

The Plaintiffs are entitled to recover the differential between the 1990 corrected benefits and the 1988 promised benefits, under a theory of equitable estoppel from the Kaiser Engineers Hanford Company alone, as the Plan Administrator. The Kaiser Engineers Hanford Retirement Plan is responsible only for continued payment of the corrected pension benefits as calculated in May, 1990. No recovery is granted from the Administrative Committee or the individual members of the Committee.

All of the Plaintiffs are former employees of both the Kaiser Engineers Hanford Company and the J.A. Jones Construction Services Company ("Jones"). They became employees of KEH in 1987 when KEH assumed the former contractual responsibilities of Jones at the Hanford Nuclear Reservation. At the time of the change-over to KEH, there were no material changes in the Plaintiffs' job duties or salaries.

During their employment with Jones, Plaintiffs participated in pension and profit-sharing plans. In 1988, KEH made available to the Plaintiffs an early retirement program that included incentives to retire before reaching age 65.

KEH was the Kaiser Engineers Hanford Retirement Plan Administrator. KEH personnel officers were agents of the Administrative Committee of the Plan.[2] Represen-

---

1. Since Lawrence Stark was similarly situated to the other Plaintiffs, and the claims pursued by Norma Stark as personal representative of his estate are substantially similar to the other Plaintiffs' claims, the Court will include Norma Stark when it refers to "Plaintiffs."

2. Jon Bailey was Principal Systems Coordinator and Benefits Accountant for KEH. (*See* Ex. 7.) Mr. Bailey's direct supervisor was Clara Berger, Manager of Compensation and Benefits and KEH Retirement Plan Administrator. (*See* Ex. 19, 21.) Ms. Berger's supervisor was John Car-

tations made by KEH personnel officers served as representations by the Plan Administrator.

Prior to the time of their retirement, the Plaintiffs were informed by KEH administrators that they could choose from several options the method in which they would receive their pension benefits. Plaintiffs were told they could receive their pension benefits in the form of either monthly payments, or one lump sum payment in an actuarial equivalent.

KEH administrators provided employees with estimates of their retirement income to assist them in determining whether to elect early retirement, and if so, whether to take a monthly payment or the lump sum payment. Prior to their retirement, Plaintiffs were told that they could receive the following monthly payments as pension benefits:

| J. Berwick | $ 762.11 |
| D. Heberlein | $1,572.51 |
| D. Palmer | $ 418.79 |
| L. Stark | $ 847.16 |
| G. Thesenvitz | $1,159.16 |
| F. Walker | $ 543.55 |
| K. Wilson | $ 837.94 |

The benefits represented as accurate were based on "Amendment # 3" to the Plan, which was in effect before the Plaintiffs' retirement.

The projections of early retirement benefits were calculated from a formula based on Amendment # 3 and developed by Judith Andersen, a KEH administrator, in coordination with a member of KEH's actuarial firm and Penny Carter, a KEH benefits manager from KEH central headquarters in Oakland, California.

The formula factored together the benefits from the Jones pension plans and the KEH pension plans to arrive at pension amounts for KEH employees who were formerly Jones employees. A worksheet based on this formula was provided to each of the Plaintiffs with the projected benefits noted. Before the Plaintiffs actually retired, another computation of projected benefits was made, which in each case was very similar to the first worksheet.

The early retirement worksheets developed by KEH contained a basic error. The error involved using an annual gross benefit figure and subtracting monthly deductions to arrive at the monthly early retirement benefit. The result was an erroneous monthly benefit calculation for each of the Plaintiffs.

The erroneous calculations were presented to the Plaintiffs prior to their retirement as accurate and reliable. While administrators did not deliberately mislead the Plaintiffs as to the amount of monthly retirement benefits, these representations were false.

All of the Plaintiffs retired from their employment with KEH in 1988 and 1989 under the early retirement plan. Each of the Plaintiffs chose to take his KEH pension benefits in the form of a monthly payment rather than an actuarial equivalent lump sum. At least one of the Plaintiffs requested a copy of the Plan including Amendment # 3 prior to electing to take early retirement. Even when requested to do so, KEH administrators knowingly failed to provide the Plaintiffs with a copy of the Plan and Amendment # 3 before their retirement.

Upon retirement, and until May of 1990, KEH paid each of the Plaintiffs the pension benefits that had been represented. The erroneous formula was not discovered until the Spring 1990 when a new formula and worksheet was being developed.

In January of 1990, the Plaintiffs received a letter from KEH indicating that the pension benefits would be even higher than projected because of additional earnings for the three months of work performed in 1989 before retirement and not computed in the original benefits. Plaintiffs had no reason to suspect the accuracy

ter, Manager of Personnel and Labor Relations and Chairman of KEH Retirement Plan Committee. (*See* Ex. 6, 19.)

of the misrepresentations until receiving a May, 1990 letter from KEH, over a year after retirement.

In May of 1990, KEH sent a letter to each of the Plaintiffs stating that a mistake had been made in the way his pension benefits had been calculated. The amount of monthly overpayments varied from $200 to over $1000 per month. The May, 1990 letter set forth the corrected pension benefits indicated below:

| | |
|---|---|
| J. Berwick | $351.15 |
| D. Heberlein | $522.07 |
| D. Palmer | $216.56 |
| L. Stark | $569.42 |
| G. Thesenvitz | $552.30 |
| F. Walker | $271.66 |
| K. Wilson | $324.52 |

After sending the May, 1990 letter to the Plaintiffs, KEH paid only the corrected monthly pension benefits. When the overpayments were discontinued in May, 1990, KEH offered Plaintiffs the opportunity of returning to work at the same or similar positions as they had previously held, with a salary comparable to their 1988 or 1989 salary. All of the Plaintiffs declined the re-employment offer. KEH did not offer to allow the Plaintiffs to change their benefit option to the lump sum package.

## DISCUSSION

The Plaintiffs contend that the Defendants made knowing or reckless misrepresentations, or a knowing concealment of material facts, to the Plaintiffs prior to retirement, upon which the Plaintiffs relied to their detriment.

### Estoppel

ERISA provides causes of action to recover benefits due under pension plans and for breach of fiduciary duty by plan administrators. ERISA does not provide the scope of contract law remedies available for recovery of pension benefits. *See Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1501 (9th Cir.1985). "Instead, Congress intended for the courts, borrowing from state law where appropriate, and guided by the policies expressed in ERISA and other federal labor laws, to fashion a body of federal common law to govern ERISA suits." *Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1502 (9th Cir. 1985).

As part of the federal common law the Ninth Circuit Court of Appeals has noted that "[e]ven though ERISA preempts common law theories of contract law the principles of equitable estoppel apply to pension plans." *Dockray v. Phelps Dodge Corp.*, 801 F.2d 1149, 1155 (9th Cir.1986) (cites omitted) (citing *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1096 (9th Cir.1985)). The *Dockray* Court outlined the essential elements of estoppel as follows:

> In this circuit, estoppel is available against a nongovernmental party who has made a knowing false representation, or concealment of material facts, to a party ignorant of the true facts, with the intention that the other party should rely on the representation, and the other party actually and detrimentally relies on it.

*Id.*

"Concealment of material facts" is included as a possible element of the estoppel theory. *Dockray v. Phelps Dodge Corp.*, 801 F.2d 1149, 1155 (9th Cir.1986). In *Carver v. Westinghouse Hanford Company, et al.*, 951 F.2d 1083 (9th Cir.1991), the distinction between concealment and misrepresentation was briefly considered, but not fully analyzed because it was raised for the first time on appeal. *Carver v. Westinghouse Hanford Co.*, 951 F.2d 1083, 1088 (9th Cir.1991). The court noted that "such a distinction between concealment and a knowing false representation might make for an interesting discussion. We decline the temptation, however, because counsel has raised this issue for the first time on appeal." *Carver v. Westinghouse Hanford Co.*, 951 F.2d at 1088.

 Concealment of material facts is an essential element in the Plaintiff's estoppel claim in this case.[3] In *Dockray*, the first

---

**3.** In *Watkins v. Westinghouse Hanford Compa-* ny, et al., No. CS–90–135–JLQ, slip op. at 27,

element of an estoppel claim in this type of case is "knowing false representation, or concealment of material facts ..." *Dockray v. Phelps Dodge Corp.*, 801 F.2d at 1155. Although the Court rejects Plaintiffs' contention that the Defendants in this case made a knowing misrepresentation to the Plaintiffs, the Court does agree that a copy of the Plan with Amendment # 3, which is the basis for the formula used to compute the projected monthly pension benefits, is "a material fact" in this case.

Some of the Plaintiffs asked KEH administrators to explain the formula and calculation of their monthly pension benefits to them before they made the commitment to take early retirement. However, the KEH administrators who were making the calculations had not participated in the creation of the formula and did not fully understand its basis. One of the Plaintiffs, Glenn Thesenvitz, specifically requested a copy of the benefit Plan and Amendment # 3, which was in effect at the time that the monthly pension benefits were calculated. The KEH administrator in charge of the benefits counselling program, Ms. Berger, was aware of Mr. Thesenvitz's request, which was repeated several times, had access to the Amended Plan and Amendment # 3, but did not provide a copy of the Plan or Amendment # 3 to Mr. Thesenvitz, or any of the other Plaintiffs. Ms. Berger testified she did not believe it was appropriate for the Plaintiffs to have a copy of the Plan and Amendment # 3. Clearly, it was an intentional decision on her part to not provide Plaintiffs with the Plan and Amendment # 3.

Part of the purpose of ERISA is to assure complete and accurate disclosure of pension plan provisions to employees. *See* 29 U.S.C. § 1001(a), § 1001(b).

Without a copy of the Amended Plan and Amendment # 3, Plaintiffs were left with no choice but to rely on KEH administrators' calculations of monthly pension benefits. Plaintiffs were not in a position to check the calculations themselves, because the only formula that they had access to was the worksheet which contained a faulty hybrid of annual and monthly factors.

The Plaintiffs could not take the Plan Administrators' projections to their accountants, lawyers, or financial advisors, because the lack of a copy of the Plan or Amendment # 3 would make any party equally reliant on the faulty formula and worksheet. At most, using the faulty formula and worksheet would have revealed only mathematical computation errors. The representations made to the Plaintiffs about their monthly pension benefits was the only information the Plaintiffs had in determining their benefits. Access to the Plan and Amendment # 3 would have given the Plaintiffs a basis and opportunity to determine that there was a miscalculation of monthly pension benefits.

The Plan document and Amendment # 3 were essential to enable Plaintiffs to accurately determine their monthly pension benefits. The failure of KEH administrators to provide a copy of those documents when requested was a knowing concealment of material facts. The Plaintiffs have satisfied the first element of their estoppel claim.

■ The second element is that the Plaintiffs were "ignorant of the true facts." *Dockray v. Phelps Dodge Corp.*,

1991 WL 349626 (E.D.Wash. July 26, 1991), the court in dicta included as an element for equitable estoppel whether "the administrator (or someone with the authority to speak for and bind the administrator) makes a false representation or concealment of material fact, knowing it to be false, **or in reckless disregard of its truth or falsity ...**" *Watkins v. Westinghouse Hanford Co., et al.,* No. CS–90–135–JLQ, slip op. at 27, 1991 WL 349626 (E.D.Wash. July 26, 1991) (emphasis added).

In their trial brief, the Plaintiffs in this case argue that the misrepresentations concerning monthly pension benefits made to the Plaintiffs prior to retirement were made either knowingly or with "reckless disregard of their truth or falsity." Although the *Watkins* Court included the "reckless disregard" standard in dicta, the Court is not persuaded that this standard is an acceptable part of the estoppel doctrine for ERISA cases. Nor is the Court persuaded that the Plaintiffs have proved their contention that the KEH administrators knowingly misrepresented the monthly amounts of pension benefits to the Plaintiffs prior to their retirement.

801 F.2d 1149, 1155 (9th Cir.1986). As discussed above, the lack of access to the Plan and Amendment # 3 necessarily made the Plaintiffs ignorant of the true facts regarding the application of the KEH formula to compute their correct monthly pension benefits. Even when some of the Plaintiffs questioned the KEH benefits counsellor about the seeming inconsistency between a relatively high monthly pension benefit and low actuarial lump sum, they were informed by the KEH administrators that the amounts were accurate. The Plaintiffs were ignorant of the true facts and incapable of discovering them because of lack of access to the material information contained in the Plan and Amendment # 3.

■ Were representations made with the intention that the other party should rely on the representation? KEH initiated the chain of events that led to the Plaintiffs' retirement by creating the early retirement package and sending an interoffice memorandum (Ex. 18) to all potential participants, including the Plaintiffs. KEH invited the Plaintiffs to visit with Mr. Bailey, the KEH benefits administrator, in order to have him compute their projected pension benefits and option packages. The KEH administrators made the erroneous representations to the Plaintiffs as part of their employment duties and had the authority to make those representations. Clearly, the representations were made with the intention that the Plaintiffs rely on them as accurate.

In addition, the KEH letter (Ex. 18) specifically provides that special advantages would be given to those people who took advantage of the early retirement package. In light of KEH's initiation of the early retirement program and the advantages that they offered to the Plaintiffs to entice participation, there is no doubt that KEH intended that Plaintiffs rely on the monthly pension benefits projections in making their

decision to take early retirement. The third element of estoppel has been met.

■ The Plaintiffs "actually and detrimentally relie[d] on [the representation]." *Dockray*, 801 F.2d at 1155. All the Plaintiffs relied on the KEH representations of their monthly pension benefits in deciding to participate in the early retirement program. The Plaintiffs retired, relinquishing jobs that could have been pursued for full compensation for additional years, and made substantial changes in their lifestyles. Some of the changes included major expenditures on recreation vehicles, remodeling projects for their homes, and acceptance of additional family responsibilities.

Although KEH offered to re-employ the Plaintiffs after the errors were discovered, the offer was without substance. The proposed re-employment was at the Plaintiffs' previous wage levels of 1988 or 1989, without adjustment for any cost of living increases. The offer did not include any compensation to accommodate the Plaintiffs for the irrevocable decisions they had made at retirement regarding early withdrawal of Social Security and 401(k) fund benefits. In at least Mr. Thesenvitz's case, the KEH offer of re-employment did not include a comparable job to the one from which he retired.[4] Nor did the offer for re-employment include compensation for lost opportunity to increase future retirement benefits.

Each of the Plaintiffs relied upon the representations that were made by KEH prior to retirement. The Plaintiffs retired before it was mandatory to do so because of the KEH representations concerning monthly pension benefits. Clearly, Plaintiffs relied on the representations made by the KEH administrators to their detriment.

■ From whom may the Plaintiffs recover? The law of the Ninth Circuit is

---

4. Mr. Thesenvitz accepted the early retirement offer at age 56½ when he was an Area Construction Manager with an annual salary of $53,000. The KEH re-employment offer was for a Area Construction Superintendent position, not Area Construction Manager position, which Mr. Thesenvitz contends was a lower ranked job.

"that an employee benefit fund may not be required by estoppel to make payments not authorized by a written plan." *Hansen v. Western Greyhound Retirement Plan,* 859 F.2d 779, 781 (9th Cir.1988) (citing *Davidian v. Southern California Meat Cutters Fund,* 859 F.2d 134, 135 (9th Cir.1988) (per curiam)). The Committee is responsible for discharging its duties "in accordance with the documents and instruments governing the plan ..." 29 U.S.C. § 1104(a)(1)(D).

Recovery on an estoppel theory against a pension plan would violate the rights of other beneficiaries in that plan and would conflict with the purposes of ERISA. *Watkins v. Westinghouse Hanford Co., et al.,* No. CS–90–135–JLQ, slip op. at 32 (E.D.Wash. July 26, 1991). However, recovery against the administrator, as opposed to the plan, would not diminish the pension funds or disadvantage other beneficiaries. *Id.* at 32–33.

The recalculated pension benefits of Plaintiffs are in accord with the Plan and Amendment # 3. The higher projected monthly benefit rate would deplete the pension fund inappropriately and would be a violation of ERISA by requiring the Committee to pay pension fund amounts that exceed the Plaintiffs' rightful entitlement. The Plaintiffs have no basis for recovery from either the Plan or the Committee.

An ERISA plan participant *may* recover from an employer as administrator on a theory of equitable estoppel. *See Carver v. Westinghouse Hanford Co.,* 951 F.2d 1083, 1087–88 (9th Cir.1991) (citing *Dockray v. Phelps Dodge Corp.,* 801 F.2d 1149, 1155 (9th Cir.1986)).

Plaintiffs are entitled to prevail on their estoppel claim against KEH as the Plan Administrator. As the Plan Administrator, KEH is liable to the Plaintiffs for the difference between the correct benefits and the amounts represented by KEH prior to retirement. Having concluded that the Plaintiffs can recover under the estoppel theory, the Court does not further analyze Plaintiffs' additional claims.

### Defendant Plan's Counterclaim

■ The Defendant Plan seeks reimbursement of the overpayment made to the Plaintiffs from the time of retirement until the monthly benefits were reduced to the correct amount in May, 1990.[5] An ERISA fund is entitled to an "equitable remedy to recover mistaken payments out of the corpus of the trust." *Luby v. Teamsters Health, Welfare & Pension Trust Funds,* 944 F.2d 1176, 1186 (3rd Cir.1991). General principles of trust law apply to ERISA. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 110, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989). In general, a beneficiary is liable for overpayments from a trust "unless he has so changed his position that it is inequitable to compel him to make repayment." Restatement 2d of Trusts § 254 (1959).

As discussed above, the Plaintiffs made substantial changes in their lives as a result of the miscalculations of their retirement benefits. Requiring the Plaintiffs to repay benefits on which they relied to their detriment would be inequitable and unjust.

The Court denies the Plan's counterclaim for overpayment.

### Attorney Fees

■ Plaintiffs have incurred attorney's fees and costs in order to pursue their rights under ERISA.

ERISA provides for an award of reasonable attorney fees and costs to either party for actions brought by plan participants, beneficiaries, or fiduciaries, to either enforce a pension plan, recover benefits, or to clarify rights under a plan. 29 U.S.C. § 1132(g)(1).

---

5. The Defendant Plan is seeking repayment of alleged overpayments resulting from the pension benefits miscalculation only from the seven named Plaintiffs in this case, although approximately thirty people were affected by the miscalculation. The Plan is not seeking repayment of alleged overpayments from any participant who chose the lump sum benefit package rather than the monthly pension benefit package.

The following factors are considered in determining whether to award attorney fees in ERISA cases:

(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting in similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*Carpenters Southern Cal. Admin. Corp. v. Russell*, 726 F.2d 1410, 1415 (9th Cir. 1984).

Because neither the Plan nor the Committee are liable in this case, the Court analyzes the factors in relation to KEH alone, as the Plan Administrator.

(1) Culpability or bad faith: Although KEH did not show bad faith in misrepresenting the benefits to the Plaintiffs, KEH knowingly withheld material facts.

(2) Ability to pay: Kaiser Engineers Hanford Company is in a better position to pay the attorney fees and costs of the Plaintiffs than the Plaintiffs.

(3) Deterrence: Award of fees in this case will undoubtedly deter KEH and other companies from acting in a similar manner in the future.

(4) Benefits of the suit: The Plaintiffs have pursued their claim to benefit a group of similarly situated plaintiffs. The use of "concealment of material facts" element to the estoppel theory applied in this case

should be of assistance in the development of remedies under ERISA.

(5) Relative merits: As discussed above, the Plaintiffs' estoppel claim is valid and equitable.

An award of attorneys' fees and costs in this matter is both appropriate and equitable. The Plaintiffs are awarded reasonable attorney's fees and costs to be paid by Defendant Kaiser Engineer Hanford Company, as the Plan Administrator.

The Plaintiffs will continue to receive the 1990 corrected monthly pension benefits from the Kaiser Engineers Hanford Retirement Plan. In addition, the Plaintiffs are entitled to monthly payments from the Plan Administrator, Kaiser Engineers Hanford Company, for the differential between the monthly pension benefits that were promised by KEH administrators prior to Plaintiffs' retirement and initially paid by the Plan and the corrected monthly pension benefits paid by the Plan.[6] (*See* Letters from J.A. Carter, KEH Administrator, to each Plaintiff (May 7, 1990), Pl.'s Ex. 6, and Appendix to this Order.) Kaiser Engineers Hanford Company, as the Plan Administrator, will pay the Plaintiffs' attorney fees and costs.

Plaintiffs' counsel is directed to submit a memorandum and affidavits within 15 days of the date of this order indicating the total extent of attorney's fees and costs. Defendant KEH's counsel will have 15 days to respond to the Plaintiffs' requests. Any response to Defendant's memorandum and affidavits will be filed within 5 days by the Plaintiff. Unless requested, the issues concerning attorney's fees and costs will be determined without oral argument.

IT IS SO ORDERED.

---

**6.** Mrs. Stark's recovery will be different from the recovery of the other Plaintiffs, because Mr. Stark apparently had elected to have a "Life–

Only" form of annuity. *See* Letter from Barbara Smetana to Norma Stark, Pl.'s Ex. #5.

APPENDIX

| Employee | KEH Projection and Amounts Initially Paid | May 1990 Corrected Plan Amounts | Monthly Difference |
|---|---|---|---|
| L. Stark | $ 847.16 | $569.42 | $ 277.74[7] |
| K. Wilson | $ 837.94 | $324.52 | $ 513.42 |
| G. Thesenvitz | $1,159.16 | $552.30 | $ 606.86 |
| D. Heberlein | $1,572.51 | $522.07 | $1050.44 |
| J. Berwick | $ 762.11 | $351.15 | $ 410.96 |
| F. Walker | $ 543.55 | $271.66 | $ 271.89 |
| D. Palmer | $ 418.79 | $216.56 | $ 202.23 |

*See* Letters from J.A. Carter, KEH Administrator, to each Plaintiff (May 7, 1990) (Pl.'s Ex. 6).

**7.** Mrs. Stark's recovery will be different from the recovery of the other Plaintiffs, because Mr. Stark apparently had elected to have a "Life–

Only" form of annuity. *See* Letter from Barbara Smetana to Norma Stark, Pl.'s Ex. # 5.