**Linda L. ADAMS, Plaintiff,**

v.

**J.C. PENNEY COMPANY, INC. and Federal Insurance Company, a subsidiary of Chubb Group of Insurance Companies, Defendants.**

No. CV–93–1561–ST.

United States District Court,
D. Oregon.

Oct. 6, 1994.

Nancy F.A. Chapman, Portland, OR, for plaintiff.

G. Kevin Kiely, Cable, Huston, Benedict, Haagensen & Ferris, Portland, OR, Joy D. Schmitt, JC Penney Co. Inc., Dallas, TX, for defendant J.C. Penney Co., Inc.

Chrys A. Martin, Lori R. Metz, Bullivant, Houser, Bailey Pendergrass & Hoffman, Portland, OR, for defendant Federal Ins. Co.

## OPINION AND ORDER

STEWART, United States Magistrate Judge:

### INTRODUCTION

Plaintiff, Linda L. Adams, brings this action for declaratory judgment under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461, against defendants J.C. Penney Company, Inc. ("Penney") and Federal Insurance Company ("Federal"), a subsidiary of Chubb Group of Insurance Companies. All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 U.S.C. § 636(c).

Defendants Penney and Federal both move for summary judgment (docket # 22 and # 27). Plaintiff also moves for summary judgment (docket # 31). For the reasons set forth below, defendants' motions for summary judgment are granted, and plaintiff's cross-motion for summary judgment is denied.

### UNDISPUTED FACTS

1. Plaintiff has been employed by Penney since January 1, 1990, and is a participant under Penney's Business Travel Accident Insurance program through Federal Insurance Company Policy, No. 64062516 ("the Policy").

2. The Policy is provided to all eligible Penney employees free of charge and is governed by ERISA.

3. Penney is the plan administrator and Federal is the claims administrator of the Policy.

4. The Policy and Rider No. 1 to the Policy provide that Federal will pay for the following losses which result within one year of an accident while on business travel:

Speech and Hearing ...The Principal Sum
Speech or Hearing ....One–Half The
Principal Sum
"Loss" shall mean ... with regard to speech or hearing, entire and irrecoverable.

5. The "Principal Sum" is defined in the Policy to mean three times the insured person's annual salary subject to a minimum of $50,000.00 and a maximum of $300,000.00.

6. A Summary Plan Description ("SPD") was prepared by Penney pursuant to its statutory duties as an ERISA plan administrator. The SPD became effective July 1991.

7. The SPD defines "covered loss" as:

Life, both hands or feet, sight in both eyes, speech and hearing, or any combination of hands, feet, sight, speech or hearing ...

Loss of hands and feet means they're cut off at or above the wrist or ankle joints. Loss of sight means total and irrecoverable loss of sight....

The SPD contains no definition for loss of hearing.

8. On February 11, 1992, plaintiff was involved in an automobile accident while on her way to Penney's district office for a meeting. She drove away from the accident, participated in the meeting, but left early and sought treatment at an emergency room for neck and back soreness. Subsequently plaintiff received treatment for hearing loss, including surgery in December 1992.

9. Tests on plaintiff's hearing, performed almost a year after the accident, show that plaintiff had a 37.01% hearing loss in her left ear and a 0.75% hearing loss in her right ear, for a total binaural percentage hearing loss of 5.29%. Her hearing loss has continued to worsen.

10. Since August 1993, plaintiff has worn bilateral hearing aids to function in her job and socially.

11. Plaintiff was not aware of the existence of the Policy or the SPD until she attended an employee meeting on July 12, 1993, almost a year and a half after her accident. Prior to that time, plaintiff has no recollection of being given the SPD or the Policy, although she was probably aware that she had business travel coverage.[1] Plaintiff received annual Benefits Statements beginning in 1990 briefly summarizing information on the Business Travel Accident Insurance. Plaintiff never considered purchasing individual business travel insurance coverage.

12. After reviewing the relevant provisions of the SPD, plaintiff promptly told Mr. Clough, Penney's Personnel Manager, that she believed she was eligible for benefits. Mr. Clough informed plaintiff that "he was not sure whether [she] would qualify" and invited her to take the matter up with Mr. Bell, Penney's District Personnel Manager. Plaintiff first telephoned and then sent a letter to Mr. Bell initiating the claim process for loss of hearing under the Policy.

13. Several weeks later Mr. Bell verbally informed plaintiff that she "did not qualify and should not seek the benefit because there was some policy language that was against [her]."[2] Plaintiff did not accept this information as correct because she believed that she was eligible based on the language in the SPD.

14. On September 25, 1993, plaintiff filed a hearing loss claim directly with Federal. Federal confirmed receipt of the claim on September 29, 1993, and informed plaintiff that her claim should be resolved within 30 days.

15. During this time, plaintiff believed that she would ultimately receive coverage for her hearing loss. Consequently, she made expenditures in greater amounts than she would have otherwise. For example, she assisted her daughter with her college expenses and, on November 5, 1993, purchased a more expensive car than she otherwise would have.

16. On November 10, 1993, Federal denied plaintiff's claim because her hearing loss

---

1. Defendants have presented evidence that Penney gave the SPD to all employees upon commencement of employment and dispute plaintiff's statement that she was not given the SPD until July 12, 1993. However, for purposes of these motions, defendants have agreed that this court may accept as undisputed plaintiff's statement that she did not receive the SPD until July 12, 1993.

2. Penney asserts that it faxed a copy of the denial to plaintiff on July 13 or 14, 1993. Again, for purposes of these motions, the court accepts plaintiff's statements.

was not total and irrecoverable and therefore not covered under the Policy.

### DISCUSSION

■ Plaintiff seeks a declaration that she is entitled to coverage under the Policy for her hearing loss, based on the representations made in the "covered loss provision" in the SPD. Plaintiff argues that under the SPD she is entitled to benefits because she suffered a functional hearing loss due to her February 11, 1992 accident while on business travel. Plaintiff asserts that she never saw the Policy, which specifically states that hearing loss must be total and irrecoverable, but relied on the statements in the SPD which do not require total and irrecoverable hearing loss.

### A. Conflict Between the SPD and the Policy

The parties disagree as to whether there is a conflict between the provisions of the SPD and the Policy with respect to loss of hearing. The SPD states that coverage is provided for "hearing loss," while the Policy states that coverage is provided only for "total and irrecoverable hearing loss." Plaintiff argues that the SPD conflicts with the Policy. Defendants argue that no conflict exists because the SPD merely serves as a summary and need not include every qualifier or limitation that is contained in the Policy.

Defendants rely on *Arnold v. Arrow Transp. Co. of Delaware*, 926 F.2d 782 (9th Cir.1991) and *Stahl v. Tony's Bldg. Materials, Inc.*, 875 F.2d 1404 (9th Cir.1989). However, these cases are of limited assistance.

In *Arnold*, the plaintiff argued that the SPD did not adequately disclose defendant's limited liability. The court rejected that argument, holding that the provisions in the SPD were sufficiently clear to apprise the employee of possible loss or reduction of benefits.

A [SPD], therefore, cannot violate ERISA merely because it could have included language more specifically discussing the precise situation of a particular beneficiary. The [SPD], instead, should provide information about the general circumstances in which benefits could be lost. The plan's

rules should be explained to permit the ordinary employee to recognize that certain events or actions could trigger a loss of benefits. It need not discuss every imaginable situation in which such events or actions might occur, but it must be specific enough to enable the ordinary employee to sense when there is a danger that benefits could be lost or diminished.

*Arnold*, 926 F.2d at 785–86, *citing Stahl*, 875 F.2d at 1408.

In *Stahl* the plaintiff also claimed that the SPD did not put him on adequate notice that under certain circumstances he could lose his benefits. The court similarly held that the SPD did not violate ERISA, stating that:

These regulations reflect the reasonable interpretation that descriptions must describe all aspects of a plan, but must remain concise so that employees will read them. Each and every case, therefore, cannot require trust fund administrators to include additional warnings in their summary plan descriptions.

*Stahl*, 875 F.2d at 1409.

These general principles address whether or not the SPD provides sufficient information to put a party on notice of a potential loss of benefit. The issue in this case is different, namely whether or not the SPD is inaccurate and directly *conflicts* with the Policy.

To determine if a conflict exists, this court must compare the representations under the applicable SPD section with the Policy. The SPD lists benefits for loss of "sight, speech, or hearing." The SPD then specifically lists the requirements necessary for receiving benefits for loss of sight, limiting coverage only to "total and irrecoverable loss of sight." That limitation is the same as the wording in the Policy for loss of sight. However, the SPD contains different wording than the Policy for loss of hearing. The Policy requires total and irrecoverable loss of hearing, unlike the SPD which contains no such limitation. It is this discrepancy between the description for loss of sight in the SPD and the Policy, as opposed to the description for loss of hearing in the SPD and the Policy, which persuades

this court that the SPD conflicts with the Policy for hearing loss.

Defendants attempt to phrase this case as one of ambiguity, not conflict, and argue that the Ninth Circuit has rejected the proposition that ambiguity in a policy should be construed in favor of the insured. *Jung v. FMC Corp.* 755 F.2d 708 (9th Cir.1985). In *Jung,* the defendant sold its business but, as part of the sale, agreed that all employees would be offered comparable salary and benefits. The ERISA policy of the former employer provided severance pay to employees upon termination. The plaintiffs argued that the sale constituted termination and, as such, they were entitled to severance pay benefits under the policy. The court disagreed and held that the clear language of the policy did not entitle the plaintiffs to severance pay. "Assuming any range of reasonable interpretation, [defendant] was entitled to construe the provisions of the plan provided that it did not do so arbitrarily or capriciously." *Id* at 713. In addition, the court " 'explicitly rejected the principle that an ambiguity in a plan should be interpreted in favor of coverage.' " *Id, citing Smith v. CMTA–IAM Pension Trust,* 654 F.2d 650, 655 (9th Cir.1981).

However, *Jung* and the other cases relied upon by defendants address situations of ambiguities in the policy, not a potential conflict between the SPD and the policy. The case before this court is not merely a question of policy interpretation. Rather the question is whether the language in the SPD conflicts with the Policy.

Defendants also argue that even though the SPD does not mention that the loss of hearing must be "total and irrecoverable," a contrary reading of the SPD is illogical and would twist the plain language of the SPD. This court cannot agree in light of the SPD's mention of "total and irrecoverable" loss of *sight.* If the SPD had not qualified the coverage provided for loss of sight, a logical conclusion very well may be that both sight and hearing require total and irrecoverable loss before benefits are payable. However, by only qualifying loss of sight, but not loss of hearing, defendants have distinguished between these two types of losses, thus creating a conflict between the SPD and the Policy.

While it may be logical and clear to defendants that they intended to cover only total and irrecoverable loss of hearing, they failed to make this clear in the written documents they prepared. It is certainly not illogical or unreasonable for a lay person, in reading the SPD, to reasonably believe that the scope of coverage for loss of sight is more limited than the scope for loss of hearing. The SPD took care to specifically limit coverage for another type of loss, but did not limit the other. Thus, the court concludes that the Policy and SPD coverage are inconsistent for hearing loss coverage, and, therefore, conflict.

**B. *The SPD Prevails Over a Conflicting Policy***

■ The courts which have addressed a conflict between an SPD and policy have uniformly held that the SPD is binding. In *Hansen v. Continental Ins. Co.,* 940 F.2d 971 (5th Cir.1991), the plaintiff argued that under the SPD he was due 60% of the amount of coverage under a group accidental death policy. The defendant, relying on the policy, argued that the plaintiff was due only 40%. The defendant asserted that the SPD should be read in concert with the policy, and if doing so revealed ambiguity or conflict, the policy controlled. The court disagreed. "The very purpose of having a summary description of the policy is to enable the average participant in the plan to understand readily the general features of the policy." *Id.* at 981. Therefore, the court held that the essential purpose of the SPD would be undermined if employees were held to the policy whenever the statutorily-mandated SPD was either ambiguous or in outright conflict with the policy.

Other circuits have also held that an SPD is binding over a conflicting policy. *Pierce v. Security Trust Life Ins. Co.,* 979 F.2d 23, 27 (4th Cir.1992) (holding that updated SPDs putting plaintiffs on notice that benefits could be terminated did not violate ERISA, but accepting other circuits' decisions finding SPDs binding over conflicting policies); *Edwards v. State Farm Mut. Auto. Ins. Co.,* 851

F.2d 134, 136 (6th Cir.1988) ("This Circuit has decided that statements in a summary plan are binding and if such statements conflict with those in the plan itself, the summary shall govern."); *Senkier v. Hartford Life & Acc. Ins. Co.,* 948 F.2d 1050, 1051 (7th Cir.1991) ("The insured is protected by the fact that, in the event of a discrepancy between the coverage promised in the summary plan document and that actually provided in the policy, he is entitled to claim the former."); and *McKnight v. Southern Life & Health Ins. Co.,* 758 F.2d 1566, 1570 (11th Cir.1985) (holding that the SPD governs when conflict arises between SPD and policy).

Although the Ninth Circuit has not directly addressed this issue, it has indicated that it also would hold that the SPD will prevail over a conflicting policy. *Price v. Provident Life and Acc. Ins. Co.,* 2 F.3d 986, 988 n 1 (9th Cir.1993), *citing Hansen* ("We note, however, that the ERISA endorsement is part of the plan summary, the terms of which are binding on Provident and which govern if the summary conflicts with the policy."). *See also, Carver v. Westinghouse Hanford Co.,* 951 F.2d 1083, 1087 (9th Cir.1991), *cert denied* —— U.S. ——, 112 S.Ct. 3036, 120 L.Ed.2d 905 (1992) (court found SPD and policy did not conflict, but stated that "[i]f the summary booklet had varied from the formal plan, [defendant] may not have been able to enforce [the plan].");  *Arnold,* 926 F.2d at 785 n 3, (citing *Edwards* for proposition that summary plan statements are binding); and *Berry v. Blue Cross of Washington and Alaska,* 815 F.Supp. 359, 364 (W.D.Wash.1993) (noting that the Ninth Circuit has analogized FEHBA provision to ERISA provisions and stating that "[t]he Court adopts the reasoning of the Fifth, Sixth, and Eleventh Circuits and holds that the language of a plan summary controls if it conflicts with a FEHBA plan.").

There do not appear to be any cases which hold that the policy prevails in the face of a conflict between the SPD and the policy. This court also is mindful of the Congressional mandate that SPDs be accurate and reliable. 29 U.S.C. § 1022(b); 29 C.F.R. §§ 2520.102–2 and 2520.102–3. Thus, consis-

tent with the Fourth, Fifth, Sixth, Seventh and Eleventh circuits, as well as the dictum in the Ninth, this court finds that where the SPD and the policy conflict, the SPD will prevail.

### C. *Reasonable Reliance is Required*

█ Defendants argue that even if the language in the SPD and the Policy are in conflict, plaintiff is not entitled to benefits because she did not detrimentally rely on the SPD.

In some circumstances, a claim under federal common law principles of estoppel will lie in ERISA cases. *Greany v. Western Farm Bureau Life Ins. Co.,* 973 F.2d 812, 821 (9th Cir.1992). The elements of such an equitable estoppel claim include reliance. *Id, citing Ellenburg v. Brockway, Inc.,* 763 F.2d 1091, 1095 (9th Cir.1985). However, the Ninth Circuit has not yet decided whether an employee must first establish that he or she detrimentally relied on the SPD when the SPD conflicts with the policy. In *Long v. Flying Tiger Line, Inc. Fixed Pension Plan for Pilots,* 994 F.2d 692 (9th Cir.1993) the Ninth Circuit recognized that the Sixth Circuit in *Edwards,* 851 F.2d at 136–37, and the Fifth Circuit in *Hansen,* 940 F.2d at 982, did not require reliance. Noting that it had not yet reached this issue, the court specifically cautioned that its decision in *Arnold,* 926 F.2d at 785 *was not* an endorsement of *Edwards. Long,* 994 F.2d at 694–695 and n 1.

Although *Long* failed to reach this issue, two district court decisions in this circuit have directly addressed it. *Kaiser Permanente Employees Pension Plan v. Bertozzi,* 849 F.Supp. 692, 698 (N.D.Cal.1994); *Berry, supra.*

In *Kaiser,* the court noted conflicting decisions in other circuits. While the Fifth and Sixth Circuits find it unnecessary to determine if a plaintiff relied on an SPD when it conflicts with the policy, the First, Seventh and Eleventh Circuits have required reliance. *Kaiser,* 849 F.Supp. at 698, comparing *Hansen* and *Edwards* (no need to establish reliance) with *Branch v. G. Bernd Co.,* 955 F.2d 1574, 1579 (11th Cir.1992), *Senkier v. Hartford Life & Accident Ins. Co.,* 948 F.2d 1050–51 (7th Cir.1991), and *Bachelder v. Commu-*

*nications Satellite Corp.,* 837 F.2d 519, 522–23 (1st Cir.1988) (reliance on SPD required). *Kaiser* found the reasoning of the First, Seventh and Eleventh Circuits more persuasive and held that an employee wishing to enforce a SPD in lieu of conflicting terms contained in the policy must prove that he or she reasonably relied on the SPD:

> Enforcement of the terms of an SPD in the absence of a showing of reliance would amount to holding the plan administrator strictly liable for the deficiencies in its SPD. The Court cannot countenance such strong medicine.

*Kaiser,* 849 F.Supp. at 698.

The court also concluded that the statements in *Hansen* and *Edwards* can properly be classified as dicta because both courts found that the employees *had* actually relied on the SPD.[3] *Id.*

*Berry* also adopted the reasoning of the First, Third and Eleventh Circuits, requiring detrimental reliance. "The court adopts the fairness concerns expressed in *Branch,* and *McKnight* . . . and holds that plaintiff will be required to prove reasonable reliance on the Plain Talk booklet in making their decision to purchase their health coverage." *Berry,* 815 F.Supp. at 365.

This court agrees with the analysis in *Kaiser* and *Berry,* and concludes that reasonable reliance is necessary before a plaintiff can recover under an SPD that conflicts with a policy.

**D. *Lack of Evidence of Reasonable Reliance***

The next question is whether plaintiff has presented sufficient evidence of reasonable reliance on the SPD to survive a summary judgment motion. Normally the issue of reasonable reliance is a fact issue. *Berry,* 815 F.Supp. at 365. However, the evidence of reasonable reliance in this case does not rise to the level necessary to create a genuine issue of material fact.

A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. *United Steelworkers of Am. v. Phelps Dodge Corp.,* 865 F.2d 1539, 1542 (9th Cir.), *cert denied,* 493 U.S. 809, 110 S.Ct. 51, 107 L.Ed.2d 20 (1989). The Ninth Circuit has stated: "No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987), *cert denied,* 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988).

Plaintiff argues that this court need only determine that plaintiff relied on the SPD, not that her reliance was detrimental or reasonable, and that she has presented undisputed evidence that she made expenditures in reliance on the SPD. Plaintiff relies on a number of cases to support this argument. However, this court does not find plaintiff's arguments persuasive.

Plaintiff asserts that *Branch* only required the plaintiff to read or rely on the SPD but not necessarily detrimentally rely in the SPD. However, *Branch* certainly required more than a mere recitation by the plaintiff that she relied on the SPD. In explaining the type of reliance necessary the court stated:

> Branch contends that we should not require reliance on a summary that *omits* or *fails to provide* information because such an omission can never inspire reliance and denies the beneficiary of information necessary to make a decision. But a beneficiary who receives a summary that omits the plan's limit on the election period could prove reliance with evidence that the beneficiary received and read the summary and *failed to make a timely election based on the belief that there was no time limit.* It is thus irrelevant in this case whether the

---

3. In fact, in *Hansen,* the court noted that the defendant raised the issue of reliance for the first time on appeal. Although it found enough evidence of reliance by the plaintiff, the court stated: "Accordingly, this Court leaves for another day the question of whether a plaintiff in an action such as this must demonstrate reliance on the summary plan description." *Hansen,* 940 F.2d at 983 and n 9. In *Edwards,* the court actually found that plaintiff had detrimentally relied on the SPD. 851 F.2d at 137.

summary *misrepresented* or *omitted* the election period.

*Branch*, 955 F.2d at 1579 n. 2 (underlined emphasis added).

Similarly, plaintiff argues that in *Genter v. Acme Scale & Supply Co.*, 776 F.2d 1180 (3rd Cir.1985), reliance never occurred because the employee died without being apprised of his right to increase his coverage mid-year, rather than at his anniversary date. However, in ruling for the plaintiff, the court required more than the unlawful concealment by defendant. In *Genter*, the deceased employee's lack of knowledge detrimentally affected his ability to potentially obtain higher coverage under the plan. In other words, the employee's lack of knowledge led to a direct forfeiture of a benefit.

> The failure to provide a clear and plain statement of the plan description is a violation of ERISA, 29 USC § 1022(a)(a), for which, *had the decedent known, he could have considered the midstream increase option that other employees exercised.*

*Id* at 1186.

Both *Branch* and *Genter* clearly require that a plaintiff prove that he or she did or did not take action resulting in forfeiture of the very benefit sought. Here there is no evidence that plaintiff took or failed to take any action causing her benefit to be forfeited. The policy only provided coverage for total and irrecoverable hearing loss. Plaintiff could have taken no action to obtain or forfeit that benefit; either she was or was not eligible for coverage under the policy depending on the extent of her hearing loss. Unlike *Branch* or *Genter*, plaintiff did not fail to make a timely election or lose a benefit due to defendants' failure to inform plaintiff of her rights under the Policy.

Plaintiff's only option, had she received, read, and understood the SPD, was to obtain other insurance prior to her accident that provided coverage for partial hearing loss. However, the evidence reveals that plaintiff was not particularly concerned about the details of any insurance provided her by Penney and would not have obtained other insurance. Plaintiff testified that she received annual Benefits Statements and knew she had coverage "on different things, but it was

never pertinent to me until after the accident." Deposition of plaintiff, p 49, Exhibit A, attached to Federal Insurance Company's Memorandum in Support of its Motion for Summary Judgment. She further testified that she never considered purchasing individual business travel insurance because she "didn't feel it necessary." *Id*, pp. 49–50.

Plaintiff also relies on *Ruotolo v. Sherwin– Williams Co.*, 622 F.Supp. 546 (D.C.Conn. 1985). In that case, defendant reduced plaintiff's long-term disability benefits retroactively by 70% after discovering that plaintiff was "moonlighting" as a bartender. Plaintiff sought restoration of his benefits on the ground that defendant's SPD did not notify the plaintiff of "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." *Id* at 547, *quoting* 29 U.S.C. § 1022(b). The court agreed that the SPD did not adequately identify circumstances which may result in loss, forfeiture or suspension of benefits but was "not persuaded" that those inadequacies:

> are sufficient in themselves to permit the plaintiff to recover his lost disability benefits. Instead, the plaintiff is entitled to recover *only* if he can establish that *he lost his disability benefits as a result of his reliance* on the deficiencies in the summary plan description.

*Id.* at 550 (emphasis added). Given the discrepancy between plaintiff's affidavit and deposition testimony, the court remanded the case to determine if plaintiff had suffered any injury in reliance on the SPD.

Plaintiff appears to argue that *Ruotolo* supports her case because Ruotolo's loss arose when he took a moonlighting job, an action unrelated to his disability coverage. However, Ruotolo took affirmative action which resulted in a forfeiture of his benefits. Here, plaintiff has not engaged in any conduct which destroyed her opportunity for coverage. While plaintiff made expenditures in reliance of the SPD, those expenditures were not the very cause of, nor even had any tangential affect on, her ability to receive coverage for her hearing loss.

Finally, plaintiff asserts that her reliance is similar to that in *Aiken v. Policy Manage-*

*ment Systems Corp.*, 13 F.3d 138 (4th Cir. 1993).[4] However, *Aiken* also is distinguishable. In *Aiken*, allegations of sexual harassment were brought against the plaintiff. The defendant offered the plaintiff the opportunity to resign in lieu of involuntary termination. The plaintiff resigned his job under protest. In his resignation letter, the plaintiff requested lump-sum distribution of his pension based on the defendant's SPD. The defendant denied plaintiff's request based on the policy. The court stated that representations in the SPD controlled over inconsistent provisions in the policy. *Id* at 140. In addition, the court required that the plaintiff " 'must show some significant reliance upon *or* possible prejudice flowing from, the faulty plan descriptions.' " *Id* at 141, *quoting Govoni v. Bricklayers, Masons & Plasterers Int'l Union of Am., Local No. 5 Pension Fund*, 732 F.2d 250, 252 (1st Cir.1984) (emphasis in original).

In *Aiken*, the plaintiff argued that his action of resigning was done in reliance on the SPD. "Aiken asserts that the immediate availability of his retirement benefits, as well as the company's promise to help expedite his benefits application motivated him to resign." *Id* at 141. Here, plaintiff can make no such argument. She did not take any action, prior to her filing for benefits, which detrimentally affected her ability to recover such benefits. She alleges reliance only *after* she filed for benefits, not before she filed.

*Kaiser* is instructive for the type of reliance required. In *Kaiser*, plaintiff's mother, Mrs. Hodges, attempted to comply with the SPD's requirements for payment of benefits prior to her death. Mrs. Hodges called Kaiser requesting the necessary forms but Kaiser refused to provide them. In response, Mrs. Hodges wrote Kaiser in an attempt to fulfill the requirements. Plaintiff argued that Mrs. Hodges' letter complied with the SPD. The court denied defendant's motion for summary judgment because the evidence was sufficient to create a factual issue that in reliance on the SPD, Mrs. Hodges took the steps she did to ensure coverage prior to dying. *Id* at 699.

Mrs. Hodges' reliance is readily distinguishable from plaintiff's alleged reliance. In *Kaiser*, Mrs. Hodges took action, in reliance in the SPD, to prevent any forfeiture of her rights under the policy. Here, plaintiff took no action in reliance on the SPD to prevent any forfeiture of benefits. Her action all occurred after her accident and after she was informed that she may not qualify for coverage. Plaintiff merely argues that she made unrelated expenditures in reliance on her belief that she was covered while her application for benefits was pending. Spending money on her daughter's education and a new car did not cause her to lose the very benefits she sought.

Plaintiff's reliance is far more akin to the facts in *Stiltner v. Beretta USA Corp.*, 844 F.Supp. 242 (D.Md.1994). There the plaintiff was denied long-term disability ("LTD") benefits because the most recent SPD expressly excluded coverage for preexisting conditions. The plaintiff sought coverage under the old SPD which did not include this exclusion. The court stated:

> The claim fails for a simple reason. According to his deposition testimony, [the plaintiff] did not see the old SPD until after he became disabled, and he has presented no evidence that he would have purchased other LTD insurance for himself had he known the true facts. Thus, he cannot show reliance or prejudice as the Fourth Circuit has squarely held a claimant must do in order to recover under an inaccurate summary plan description.

*Id* at 244 (citations omitted).

Plaintiff attempts to establish reliance on the SPD by her testimony that she made expenditures before the denial of benefits on November 10, 1993, based on a reasonable belief that she had coverage. It is this asser-

---

**4.** Plaintiff also relies on *Thesenvitz v. Kaiser Eng'rs*, 796 F.Supp. 447 (E.D.Wash.1992) but that decision was reversed by 15 F.3d 1090 (9th Cir.1994), *petition for cert. filed* 63 U.S.L.W. 3066 (July 20, 1994) (No. 94–127).

tion that the court cannot countenance. This court finds plaintiff's reliance entirely unreasonable and without basis. Plaintiff may have reasonably assumed that her loss appeared to be covered when she initially read the SPD in July 1993. At no time, though, did defendants give any indication to plaintiff that her loss was covered. Once plaintiff made inquiries, she was informed that she was not covered under the SPD. Plaintiff cannot assert that defendants misled her after July 1993.

Plaintiff argues that she relied on the SPD *until November 10, 1993* when defendants "corrected their concealment of a material fact. That fact was, of course, the existence since 1983 of the contradictory requirement found in Rider No. 1." Plaintiff's Letter Memorandum, dated September 21, 1994, p. 6. This statement is not supported by any evidence before this court. The evidence is undisputed that as far back as July 1993, plaintiff was put on notice of a genuine dispute regarding coverage of her hearing loss. Plaintiff testified that she learned in late July 1993 from Mr. Bell that "there was some *policy language* that was against" her. Plaintiff's Affidavit, p. 5 (emphasis added). Thus, plaintiff's own evidence shows that she had knowledge that the policy did not provide coverage well before any reliance by her.

Plaintiff testifies that she did not know how to challenge the information provided to her and no one advised her how to file a claim. *Id.* However, plaintiff does *not* testify that she made any attempt to obtain a copy of the policy referred to by Mr. Bell or that her request was refused. This court is not persuaded that defendants withheld the Policy information until November 10, 1993. Plaintiff had ample notice that she may not be covered prior to that time.

In addition, when plaintiff applied for benefits from Federal, she was informed that she should receive notice within 30 days and provided a telephone number to call collect if she had any questions. Rather than calling to learn the status of her application, plaintiff

proceeded to make expenditures while her application was pending. Plaintiff has not presented any evidence as to why these expenditures were necessary prior to a determination of coverage by Federal. She provides no evidence that she could not have waited five more days until Federal issued its decision before making her expenditures. Arguably, if plaintiff's expenses had been made prior to a determination of her claim, and she had been given *no* indication that her claim was not covered, she might be able to argue that her reliance was reasonable. However, none of those facts are present here. The only evidence presented in this case is that plaintiff relied on her expectancy of obtaining coverage.

Plaintiff's argument turns the issue of reasonable reliance on its head. To hold that plaintiff has submitted sufficient evidence of reasonable reliance by making expenditures after receiving notice of lack of coverage would vitiate the very requirement of reliance. Here, no reasonable reliance of coverage can be inferred. Otherwise no provider would be safe from a post-denial self-serving policy interpretation by an insured.

■ Although plaintiff argues that she relied on the SPD, she also argues that she should not be required to detrimentally rely on an SPD that she never saw. Otherwise, plaintiff would be punished for defendants' failure to provide her the required SPD. Obviously plaintiff cannot rely on an SPD which she has not been given. This court is not excusing defendants' failure to provide plaintiff with the SPD, if in fact it failed to do so. Such nondisclosure may violate ERISA. However, such nondisclosure does not enable plaintiff to claim benefits based on language contained in the SPD which conflicts with the Policy. To make that claim, plaintiff must prove reasonable reliance on the particular language of the SPD which conflicts with the Policy. This she has not done.

### E. *Remaining Issues*

The court's decision today addresses only whether plaintiff can recover under the con-

flicting provision of the SPD which provides coverage for "hearing loss." Although this court holds that plaintiff cannot recover under that provision because she did not reasonably rely on the representations in the SPD, it is not addressing the merits of any claim by plaintiff for coverage under the "total and irrecoverable" provision in the Policy. This decision should in no way affect plaintiff's ability to bring such a claim in the future as the issue has not been presented to, or considered by, the court.

Other remaining factual issues concerning causation were neither presented to nor resolved by this court. Those issues include whether plaintiff's hearing loss was caused by the accident, as opposed to heredity, and whether the onset of her hearing loss was complete within one year after the accident. Those issues remain for future determination should the need arise.

In addition, Penney requests an award of attorneys' fees. As this court has not yet issued a judgment in this matter, Penney's request is premature. Any request for attorneys' fees must comply with FRCP 54 and Local Rule 265.

### ORDER

For the reasons set forth above, defendant Penney's motion for summary judgment (docket # 22) is GRANTED, defendant Federal's motion for summary judgment (docket # 27) is GRANTED, and plaintiff's cross-motion for summary judgment (docket # 31) is DENIED.